**UNITED STATES of America,
Appellee,**

v.

**Earnest NORMAN, Appellant.**

**No. 19875.**

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1968.

Rehearing Denied Dec. 2, 1968.

Harley C. Hardesty (argued), San Francisco, Cal., for appellant.

John S. Milano, (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge:

Earnest Norman appeals from his conviction on three counts of an indictment charging violations of the narcotic laws,[1] and from the subsequent denial of a motion for a new trial.

One of his arguments in this court is that the evidence is insufficient to support the jury verdict of guilty.

The only evidence received at the trial was that which was produced by the Government. That evidence reflects the product of what has become almost classic procedure by the Federal Bureau of Narcotics in gathering evidence against persons suspected of narcotics violations.

On the morning of January 14, 1964, Government Agent Charles R. McDonnell monitored a telephone call between Porter White, a special employee of the government, and the defendant. During this telephone conversation White arranged to purchase a quantity of heroin from defendant. McDonnell and another agent then strip-searched White and ascertained that he had no narcotics in his possession. White was provided with government advance funds to enable him to purchase narcotics from defendant.

Next, McDonnell drove with White to 955-A Oak Street, San Francisco, where White and defendant had arranged over the telephone to complete the transaction. McDonnell remained in the parked car and observed White enter the residence at that address and come out a few minutes later. Other agents also observed White's entry and exit from this dwelling. White returned immediately to the automobile and gave McDonnell a balloon containing heroin. White was then driven to the Bureau office and again strip-searched. Fifty dollars of the advance funds were no longer on White's person.

Substantially the same procedure was followed with respect to the second transaction which occurred on the evening of the same day. This time, however, McDonnell saw defendant come out of the Oak Street house with White. Defendant was having some trouble with his automobile and McDonnell and White helped defendant push his car to a service station.

Concerning the third transaction, which occurred on February 18, 1964, there was no monitored telephone call. However, McDonnell strip-searched defendant and later saw defendant and White conversing on the sidewalk before the two entered the house on Oak Street. When White emerged a few minutes later he went directly to McDonnell's automobile and gave McDonnell a packet of heroin. The latter then gave White some government funds and watched while White handed a quantity of money to a woman at the front door of the house. The woman and another man had arrived and entered the house with defendant a few minutes before.

White testified at length on direct examination concerning all three transactions. He stated that on each occasion defendant sold him a quantity of heroin in return for money which White had obtained from McDonnell. White's testimony in this regard was not shaken on cross examination.

■ We hold that the evidence was adequate to sustain the verdict of guilty.

Defendant argues that the trial court unduly restricted the cross examination of White.

On direct examination, White disclosed that he had been previously convicted of a Dyer Act offense, and of the crime of pandering. White was subjected to a thorough cross examination which is set out in thirty-two pages of the court reporter's transcript. It was again

1. Norman was charged with selling, and concealing and facilitating the sale, concealment and transportation of described amounts of heroin twice on January 14, 1964, and once on February 18, 1964, in violation of section 2(c) and (f) of the Narcotic Drugs Import and Export Act, 35 Stat. 614 (1909), as amended 21 U.S. C. § 174 (1964).

brought out on cross examination that White had been previously convicted on two occasions. White also disclosed that he had received about two hundred dollars for helping the Federal Bureau of Narcotics.

In addition, White said that he first came into contact with Agent McDonnell in November, 1963, when he was being investigated for a narcotics law violation which led to his arrest on a still pending state charge. White testified that he had not been promised any leniency in the state case in return for his work for the Federal Bureau of Narcotics, but said that he hoped such work would lead to such leniency.

White was then asked, on cross examination, whether, during the period from November, 1963, when he first began working with McDonnell, to February, 1964, he had made many purchases of narcotics other than those made under the supervision of Agent McDonnell, or other agents. White declined to answer on the ground that the answer might tend to incriminate him. The trial court sustained the witness' exercise of the privilege and excused him from answering the question.

White was later asked, on cross examination, whether, during January and February, 1964, when the three transactions occurred, he had access to heroin from sources other than defendant. White again invoked the Fifth Amendment privilege against self-incrimination and did not answer. Counsel for defendant also asked White, on cross examination, if he had been in possession of heroin during January and February, 1964, other than the heroin involved in the three transactions here in question. White declined to answer, once more claiming the privilege against self-incrimination.

With regard to each of these three refusals of White to answer a question propounded on cross examination, counsel for defendant did not object to White's exercise of the privilege on the ground of the privilege being unavailable, nor did he move that because of the exercise of the privilege White's testimony should be stricken. Instead, counsel proceeded with a different question. Before the cross examination ended, however, counsel took pains to ascertain that White could not be deprived of the Fifth Amendment privilege on the ground that he had been granted immunity, the Government attorney stating that no immunity had been granted.

■■ The right of cross examination is included in the right of an accused in a criminal case to confront the witnesses against him, as guaranteed by the Sixth Amendment. Smith v. State of Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed. 2d 956. Thus, while the extent of cross examination is within the sound discretion of the trial court (see *Smith* at 132), a restriction upon cross examination so severe as to constitute a denial of that right is reversible error. See Harries v. United States, 9 Cir., 350 F.2d 231, 236.

Here, however, the trial court did not, with regard to the three instances in question, restrict the cross examination. The restriction resulted from the exercise, by the witness, of his undoubted right, under the circumstances, to decline to answer on the ground of possible self-incrimination. As stated above, counsel for defendant did not, at the times the privilege was exercised, question White's right to do so. Moreover, we perceive no ground upon which counsel could have successfully objected.

■ The question, then, is not whether the trial court erred in restricting the cross examination of White, but whether all or part of the latter's testimony should have been stricken because he claimed the privilege as to the three indicated questions. As noted above, there was no motion to strike White's testimony. The failure to do so could therefore be ground for reversal only upon a showing that it constituted plain error affecting substantial rights. See

Rule 52(b), Federal Rules of Criminal Procedure.

 Counsel for defendant apparently had two purposes in propounding these questions to White. One was to undermine White's credibility as a witness by requiring him to disclose that he had engaged in other unlawful conduct during the period in question. This was a purely collateral line of inquiry in the sense that the questions were not concerned with the details of his direct examination. As to this collateral line of inquiry White had already disclosed that he had been convicted of two other crimes and that a narcotics law charge was then pending in a state court. Under the circumstances we do not believe the failure of defendant to elicit this further information concerning White's past misconduct was prejudicial.[2]

A second purpose counsel for defendant had in mind in asking these questions on cross examination, was to show, if possible, that White had a source of narcotics other than defendant, which White might have used in connection with the three described transactions. But the testimony concerning the strip-searches of White, before his observed entries into defendant's residence and after his observed exits, establish that if defendant had any other source of narcotics he did not have access to it at the times in question. Under these circumstances the answers sought to be obtained from the cross examination of White, even if favorable to defendant, would not have undermined the Government's case.

As to all matters which could have helped defendant, his counsel's extensive and able cross examination of White proceeded unhindered. We conclude that the failure of the trial court, on its own motion, to strike White's testimony was not plain error affecting defendant's substantial rights, and therefore does not justify reversal.

Defendant contends that the trial court erred in quashing writs of habeas corpus ad testificandum which, at defendant's request, had been served upon three individuals then confined in the San Francisco County jail. The writs were sought and obtained at or near the time the Government rested and the trial court expressed the view that this action on behalf of defendant was unreasonably late. The writs were quashed after defendant made an offer of proof as to the testimony these witnesses would have given. According to these offers of proof, each of the three witnesses would have testified that, on occasions from December, 1963, to February, 1964, they had purchased narcotics from White.

 This testimony would have been improper for purposes of impeachment. Extrinsic evidence as to specific misdeeds may be inquired into for purposes of impeachment only where convictions resulted. See Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168; Thurman v. United States, 9 Cir., 316 F.2d 205.

Defendant states, however, that the evidence was tendered for the purpose of showing that White had an opportunity to obtain narcotics during the period when the three transactions which are the subject of this prosecution occurred. But, as noted above, the other evidence in this case was such that assuming White had another source of narcotics, he did not have access to it for the transactions in question.

The likelihood that such a collateral line of inquiry would have confused and misled the jury concerning the primary issue of defendant's guilt far outweighed any possible probative value to defendant of the proffered evidence. We therefore hold that the trial court's exercise of discretion in rejecting the evidence ought not to be disturbed. See Bowe v. United States, 2 Cir., 360 F.2d 1, 15.

Defendant argues that the judgment should be reversed because, at the trial, the Government made knowing use of perjured testimony.

---

2. See United States v. Cardillo, 2 Cir., 316 F.2d 606, 611. See also, Coil v. United States, 8 Cir., 343 F.2d 573, 578.

At the trial Agent McDonnell testified that he monitored two telephone calls White made to defendant. In this connection McDonnell testified that he had checked with the telephone company and ascertained that the telephone number which White called was listed in the name of defendant. In support of a motion for a new trial on the ground of newly-discovered evidence, defendant produced a letter from the telephone company stating that the telephone was not registered to Norman during the months of January and Februray, 1964. Notwithstanding this showing, the trial court denied the motion for a new trial.

■ The defendant in a criminal prosecution is deprived of due process of law if the prosecutor makes knowing use of perjured testimony on a material point. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Here, however, the tendered letter from the telephone company did not establish perjury on the part of McDonnell. He may merely have been misinformed by office personnel when he checked the listing with the company. Moreover, defendant made no showing whatever that, if McDonnell did perjure himself, the prosecuting authorities knew he was doing so.

■ In any event, the telephone listing was immaterial under the circumstances of this case. There was no dispute about the fact that defendant resided at 955–A Oak Street, San Francisco, where the three transactions took place. Government agents witnessed White enter and leave that residence on three occasions. They also saw defendant leave that dwelling at the time of the second transaction, and enter it at the time of the third transaction. Assuming that the telephone was listed in the name of someone else, that fact would not have undermined the Government's case in the least. Moreover, defendant must have known at the time of the trial whether the telephone was listed in his name during the period in question. It is safe to assume that if he then thought it was a material matter he would have produced the contradictory evidence at the trial.

The trial court did not abuse its discretion in denying the motion for a new trial. See Evalt v. United States, 9 Cir., 382 F.2d 424, 428–429. Nor does the incident in question in any other respect entitle defendant to a reversal of the judgment.

The defendant raises many additional questions. We have considered each of these additional questions and have found them so deficient in merit that discussion of them is not warranted. These additional questions are listed in the margin to record the fact that they have been litigated adversely to defendant on this appeal.[3]

Affirmed.

---

3. The contentions advanced by appellant which we hold to be so lacking in merit that no discussion is required, are: (1) denial of effective aid of counsel, (2) admission of evidence obtained as the result of an unlawful search and seizure, (3) denial of right to be confronted "with his own person" as the witness against him, and to be confronted with other witnesses, (4) defendant was compelled to incriminate himself, (5) defendant was placed in double jeopardy, (6) Government counsel was guilty of prejudicial misconduct, (7) jury instructions were erroneous and constitutionally defective, (8) failure to instruct on credibility of informer's and accomplice's testimony, (9) use of informers to gather evidence, (10) failure to grant defendant right to make pre-trial motions in pro. per. and failure to rule on pre-trial motions to dismiss counsel, (11) increasing bail without notice and hearing, (12) prejudicial gratuitous Government testimony unresponsive to questions, (13) errors of trial court with regard to the Fifth Amendment rights of the informer, (14) use of "unidentified, unrelated and immaterial" chemicals to convict defendant, (15) trial judge was not authorized to sit in the district where the trial was had, and (16) defendant was not adequately informed of the nature and cause of the accusation against him.