**UNITED STATES of America**

v.

**Harry RICCOBENE, John Scially, Joseph Zavod.**

**Crim. No. 69–460.**

United States District Court, E. D. Pennsylvania.

Dec. 17, 1970.

Richard T. Spriggs, and Thomas H. Henderson, Jr., Dept. of Justice, for the Government.

Zinke, Shinehouse & Holmes by Lester J. Schaffer, and Hal F. Doig, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the court is a motion by all three defendants for new trial pursuant to Fed.R.Crim.P. 33. A jury convicted the defendants of conspiracy and interstate transportation of a stolen security in violation of 18 U.S.C. §§ 371, 2315, 2314 and 2. Very able and skillful defense counsel have carefully reviewed the record and have cited thirty (30) reasons in support of the motion. These included practically every ruling of the court which was adverse to the defendants. In the interests of judicial economy and in an effort to minimize and possibly avoid confusion, the court will attempt to collectively discuss those rea-

sons having a related subject matter and will only review each individual contention where necessary.

1. *Denial of defendants' motion for a continuance and/or severance.*

On March 13, 1970, defense counsel filed, among other motions, a motion for a continuance and a motion for severance. The contentions in support of each of these motions were substantially similar. They basically involved counsel's alleged inability to properly prepare the case for trial because of the incarceration of Harry Riccobene, one of the defendants, because of a parallel schedule set in another federal criminal matter in which counsel was involved and because of the government's failure to cooperate in pretrial discovery.

It is clear, and defense counsel agree, that the granting or denial of a motion for a continuance is a matter which is clearly within the discretion of the trial court. United States v. Weathers, 431 F.2d 1258 (3d Cir. October 6, 1970). The contention is, however, that under the facts of this particular case that discretion was abused.

██ In determining whether to deny this motion, the court considered several factors. Defense counsel had entered his appearance in the case on January 29, 1970, and trial did not commence until April 6, 1970. Counsel for the government represented to the court that a great amount of pretrial discovery had been effected and that probable agreement on any remaining discovery could and would be rapidly achieved. The court also considered the fact that the state incarceration of defendant Riccobene was not one of brief duration, but rather would involve a continuance of possibly several years. Furthermore, at the trial of this case, counsel's able and diligent efforts on behalf of his clients clearly reflects the adequacy of his preparation and the absence of any prejudice from the refusal of his request for additional time.

It is interesting to note that while one of the most frequent complaints in to-days judicial process is the delays which a defendant must suffer prior to his case reaching trial, these defendants complain of the *speed* with which they were brought to trial. One of the reasons for the government's haste in this case was their belief which they represented to the court at oral argument on this motion that the life of their key witness, the so-called "informer", was in jeopardy and that any further delays in reaching trial might result in his permanent unavailability.

In light of the foregoing considerations the court concluded that it would be inappropriate to grant a continuance and now concludes that this exercise of judicial discretion was not abused.

██ Defendants' motion for a severance was based solely upon the state incarceration of the defendant, Harry Riccobene. Counsel contended that because of this fact, the defendants were unable to confer *inter se* and with counsel, and therefore counsel was unable to properly prepare the case for trial.

Again it is clear that this matter is within the sound discretion of the trial court and again it is contended that the denial of the requested severance was an abuse of that discretion.

In determining the disposition of this motion, the court again considered a number of relevant factors. Here the defendants were jointly indicted and charged with the commission of the same offenses. The government's evidence would be substantially similar against all three defendants and the same defense counsel who would conduct the cross examination of the government witnesses represented all three defendants. The court again noted that the state incarceration of defendant Riccobene could possibly extend for several years. But most importantly, the indictment charged all three defendants with conspiracy, and a severance as to one would visit undue hardship and expense upon the government.

In weighing these factors against defense counsel's assertion that he could

not properly prepare for trial without being able to consult with his clients simultaneously, the court concluded that the defendants clearly failed to sustain their burden of proving that they would be so severely prejudiced by a joint trial that it would in effect deny them a fair trial. United States v. Tomlin, 380 F.2d 373 (3d Cir. 1968); United States v. Barber, 296 F.Supp. 795 (D.Del.1969), reversed on other grounds as to Calvin Jerome Loper, 429 F.2d 1394 (3d Cir. 1970); United States v. Crisona, 271 F. Supp. 150, 154 (S.D.N.Y.1967).

2. *Denial of motion to dismiss the indictment.*

In support of this motion, defense counsel contended that the language used in the indictment was at variance with that contained in the statute.

The law on this point is well settled, Pereira v. United States, 202 F.2d 830 (5th Cir. 1953), affirmed, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Koptik, 300 F.2d 19, 22 (7th Cir. 1962), and therefore the court concluded at that time, as it does again now, that this contention is clearly without merit.

3. *The impropriety of a statement made by counsel for the government before the grand jury.*

Here the defendants contend that a statement made by one of the government counsel before the grand jury was improper, highly inflammatory and sufficiently prejudicial to warrant, at the very least, a new trial.

It appears that the alleged improper statement occurred during an explanation to the grand jury by one of the government counsel that the government was about to present hearsay testimony because, in their opinion, it would be dangerous for their key witness, Edward H. Wuensche, to travel to Philadelphia to testify in person. Counsel for the government further stated that their witness "would be putting himself in danger in coming to Philadelphia, because the proposed defendants in this case, if you see fit to indict, are connected with organized crime and could harm him".

█ While the grand jury was certainly entitled to know why the government was presenting hearsay testimony through a Secret Service agent in lieu of the direct testimony of the witness actually involved in the transactions, it was unnecessary for the prosecutor to interject a statement of opinion which was without evidentiary substantiation to the effect that these defendants were personally involved in organized crime and could personally harm this witness. However, this statement could not have in any way effected the fairness of the trial that the defendants received before the *petit* jury since the statement was neither admitted into evidence nor otherwise made known to the jury. It was the petit jury that determined that the government had sustained its burden of proving the validity of the allegations contained in the indictment beyond a reasonable doubt. Therefore the argument that this statement may have in some way prejudiced the defendants and produced an invalid indictment has been rendered academic and is clearly insufficient to set aside the defendants' conviction.

4. *Limitation on cross-examination of government witnesses.*

Of the numerous contentions of defense counsel under this subject area, the basic claim is that the court prejudicially limited the defendants' right to cross-examine the primary government witness, Edward H. Wuensche.

██ "The right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him, as guaranteed by the Sixth Amendment." United States v. Norman, 402 F.2d 73, 76 (9th Cir. 1968) citing Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1967). The extent of cross-examination is within the discretion of the trial court. However, a severe and prejudicial restriction upon cross-examination

sufficient to constitute a denial of the right of confrontation would be a proper basis upon which to set aside a subsequent conviction. United States v. Norman, *supra*.

Here the cross-examination which defense counsel contends was severely and prejudicially limited consumed approximately two and one-half days of trial. A number of the matters upon which the defendants focus their complaints involved situations where either the question was improper or the information sought was wholly unrelated to the issues at trial. However, in order to understand the basis for the court's sustaining government counsel's objections in the instances where the question was neither improper nor irrelevant, it is necessary to view these rulings in their proper perspectives. Where the defendant in a criminal case introduces no evidence at trial, it is the practice in this court to permit defense counsel to make the last closing argument to the jury. During the trial of this case both sides jockeyed for this desirable position. In cautiously guarding against introducing evidence, defense counsel created the dilemma of which he now complains. In the process of achieving this tactical prize, defense counsel attempted on cross-examination to do indirectly that which he purposely and successfully avoided doing directly, i. e., affirmatively introducing evidence. Viewed in this light, defense counsel should not now be permitted to complain of evidentiary problems created by his own trial strategy.

■ After reviewing both the direct and cross-examination of Mr. Wuensche, the court concludes that the record as a whole does not support the contention that the defendants were severely and prejudicially limited in the cross-examination of this or any other government witness.

5. *Refusal to instruct the jury to disregard the remark concerning defense counsel's alleged impropriety.*

This matter arose from a comment made by counsel for the government while stating his objection to a question asked by defense counsel. In stating his objection, counsel for the Government stated "This whole line of questioning is improper and Mr. Schaffer, I am sure, is aware of it". (N.T. 638). The court, after sustaining government counsel's objection, directed defense counsel to proceed and ask his next question. Defense counsel thereupon requested the court to instruct the jury to disregard that language. This request was answered by the court with the reaffirmation of the prior direction to proceed with the next question.

■ Defense counsel now contends that this exchange was sufficiently prejudicial to require this court to set aside the defendants' conviction and grant a new trial. This position is clearly erroneous. Without becoming involved in the merits of government counsel's comment concerning the impropriety of defense counsel's line of question and defense counsel's cognizance of it, it is sufficient to state that the court instructed the jury that the statements and remarks of counsel are of no evidentiary significance and that the court's occasional admonition of an attorney who, out of zeal for his cause, does something which may not be in keeping with the rules of evidence or procedure is likewise of no significance.

6. *Failure to instruct the jury during the course of trial on the limited admissibility of one defendant's statements against the others.*

■ During the course of the trial, counsel, on two occasions, requested the court to instruct the jury on the inadmissibility of statements made by one coconspirator as evidence against other coconspirators unless and until the existence of a conspiracy is established. Counsel for the government agreed to the propriety of the request and voiced no objection. The court thereupon instructed the jury that they must accept and be guided by defense counsel's statement (N.T. 227, 666).

Defense counsel does not question the adequacy of the court's charge to the jury on this point (N.T. 1107). Rather the contention is that the defendants were substantially prejudiced by not having the court merely repeat to the jury at the time the evidence was being introduced that which defense counsel had ably and accurately stated just a few moments before. Rather than becoming tedious and repetitious, the court merely adopted the language contained in defense counsel's request and instructed the jury that they were to be guided by it. The sufficiency and adequacy of this action is readily apparent from the language used by defense counsel at the time of the second request, i. e., "If Your Honor please, at this time I renew a request *previously granted* that the jury be advised that \* \* \*."

Accordingly no prejudice was visited upon the defendants at trial from the foregoing procedure, and the final charge of the court on this point clearly renders the matter without merit.

7. *Use of the tape recordings of telephone conversations monitored without the consent of the defendants.*

At trial the government introduced into evidence and played to the jury tape recordings of telephone conversations between Edward Wuensche and the defendants, Harry Riccobene and John Scially. These conversations were monitored and recorded with the permission of Mr. Wuensche. During the testimony, Mr. Wuensche referred to the telephone conversations, identified the tape recordings and indicated that his consent to the monitoring and recording of the conversations was given freely and voluntarily. The original tape recordings were made on small cassette cartridges. These recordings were then transferred to a larger tape in order that they could be played on a tape recorder with sufficient volume to enable everyone to clearly hear what was said. This was done because the government believed that the volume of the cassette recorder would be insufficient. A transcript of the conversations was made

available to defense counsel and the government offered to permit defense counsel to listen to both the copies and the original recordings in order to insure that they were identical. This offer, however, was never acted upon by defense counsel (N.T. 236).

The defendants contend here that these recordings were improperly admitted into evidence and played to the jury for three reasons: (1) the conversations were monitored and recorded without the consent of the *defendants* and therefore violated their constitutional rights; (2) the conversations were improperly *disclosed* in violation of 18 U.S.C. § 2515; and (3) the original cassettes were the best evidence of contents of the conversations and assuming their admissibility at all, the original cassettes should have been played to the jury.

Section 2511(2) (c) of 18 U.S.C. permits government interception of communications where one of the parties to the conversation has given prior consent to such interception. This section of the statute embodies and reaffirms pre-existing case law on the subject of consensual interception of wire or oral communications. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Lopez v. United States, 373 U. S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

In support of their position the defendants rely upon United States v. White, 405 F.2d 838 (7th Cir. 1969), cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), restored to calendar for reargument, 396 U.S. 1035, 90 S.Ct. 677, 24 L.Ed.2d 679 (1970). The court in the *White* decision very broadly interpreted the Supreme Court's decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and in effect held that in all cases judicial authorization must be obtained prior to intercepting and recording communications unless both parties to the conversation gave prior consent to the monitoring. The *White* decision, however, is both factually and legally

distinguishable from the present situation and therefore is not controlling.

It should first be noted that Katz v. United States, *supra*, relied on by the majority in *White*, involved monitoring and recording of conversations without the consent of *either* party to the conversation and is therefore clearly distinguishable from *Rathbun*.

In addition, it is clear that the *White* decision insofar as it refers to one party consensual interceptions is clearly contra to the recent language in Lee v. Florida, 392 U.S. 378, 381, 88 S.Ct. 2096, 20 L. Ed.2d 1166 (1968) and the holdings in Rathbun v. United States, *supra*; Lopez v. United States, *supra*; and On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). Furthermore, this court finds the rationale of the Fourth and Second Circuits more persuasive to situations involving interceptions with the prior consent of one of the participants to the conversation. United States v. De Vore, 423 F.2d 1069, 1074 (4th Cir. 1970); United States v. DiLorenzo, 429 F.2d 216 (2d Cir. 1970); United States v. Kaufer, 406 F.2d 550 (2d Cir.), aff'd on other grounds, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414, rehearing denied, 395 U.S. 917, 89 S.Ct. 1741, 23 L.Ed.2d 232 (1969).

Finally this case is factually distinguishable from the *White* decision. There the consenting participant did not testify at trial. The only testimony introduced by the government was that of the government agents who had monitored and recorded the conversations. Thus, the majority in *White* was able to factually distinguish the contrary holding in Lopez v. United States, *supra*. In the present case however, the consenting participant took the stand and testified at length to the recorded phone conversations in question.

▮ In answering defendants' contention of alleged improper disclosure in violation of Section 2515 of 18 U.S.C., it is sufficient to state that Section 2515 pertains to disclosure of information obtained in violation of the statute. Since the statute lawfully permits interception of communication where one party has given prior consent to the interception, a disclosure of such information obtained thereby is equally lawful.

▮ Defendants' final position concerning the playing of the copy rather than the original cassettes is plainly lacking in merit. This procedure was followed for the convenience of the jury and the court. Defense counsel does not contend the copy was in some way not identical to the originals, but rather that the original cassettes were the best evidence of their contents. This is clear from defense counsel's failure to avail himself of the government's offer of permitting him to listen to both recordings to insure that they were identical. Since they were identical and since the substitution was made solely for the listening convenience of the jury and the court, there is no infirmity in this procedure.

8. *Introduction of the Zavod confession.*

▮ The first contention here concerns the question of whether the government proved that the statement was voluntary. The defense contends that it did not because of the failure to call all of the Secret Service agents who interviewed defendant Zavod after his arrest. It was established at trial that three agents questioned defendant Zavod at the Secret Service office. At both the suppression hearing and before the jury at trial, the government produced two of these agents who testified as to what transpired subsequent to Zavod's arrest. However, the third agent, Agent Gibbs, was not called as a witness at either proceeding. The defendants contend that this was substantial error.

It is clear that the government must prove beyond a reasonable doubt that defendant Zavod's statement was knowingly and voluntarily made. Coyote v. United States, 380 F.2d 305 (10th Cir. 1967); *cf.* United States v. Panepinto, 430 F.2d 613, 618 (3d Cir. 1970). It is equally clear from the facts on this record that

the government adequately sustained its burden. The government's evidence established that defendant Zavod was in custody only a few hours, that he was repeatedly warned of his rights, that he made a telephone call to Philadelphia and that he executed a waiver of rights form prior to his giving the statement in question. This was clearly sufficient to permit the question to go to the jury. All that Agent Gibbs' testimony could add would be a cumulation and repetition of that already adduced.

Defendants also contend that the introduction of testimony concerning defendant Zavod's statement was a denial of their Sixth Amendment right of confrontation, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in spite of the government's cautious efforts to avoid injecting these problems into the case.

The government did not introduce the signed confession into evidence, but had the Secret Service Agent to whom the statement was given testify as to the substance of its contents. The testimony carefully avoided any possible implication of or reference to the other two co-defendants and directed the incrimination against Zavod *alone*.

The defendants nevertheless contend that the procedure employed by the government with respect to defendant Zavod's statement in some way inferentially implicated and incriminated the other two co-defendants and thereby denied them of their right of confrontation. The court disagrees.

 Since it is quite clear that in a joint trial it is proper to admit into evidence an incriminating statement which inculpates *only* the declarant, United States v. Lipowitz, 407 F.2d 597 (3d Cir. 1969); White v. United States, 415 F.2d 292 (5th Cir. 1969), there was no denial of their Sixth Amendment right of confrontation.

9. *Excision of the statement of the government witness, James E. Heavey, and the refusal to permit defense counsel to play the "Wuensche—Reifler" phone conversation to the jury.*

This final matter involves two related incidents which occurred at trial. During the examination of Secret Service Agent James E. Heavey, defense counsel was supplied with his statement pursuant to 18 U.S.C. § 3500. A portion of this statement had been excised by counsel for the government, and defense counsel requested that he be furnished with the excised portion. The court granted this request and directed government counsel to produce the entire statement. The excised portion of the statement referred to a telephone conversation between Edward Wuensche and Lionel Reifler that Agent Heavey had monitored and recorded apparently with the prior consent of Mr. Wuensche. This was the first time that defense counsel learned of the existence of this recording. Counsel for the government offered to make the recording available to defense counsel for whatever purpose counsel deemed appropriate. However, counsel for the government informed both the court and defense counsel that they did not intend to offer the tape recording into evidence because it was hearsay and contained incriminating statements as to the defendants. Defense counsel indicated his desire to have this evidence presented to the jury. It was suggested at that time that if defense counsel desired to introduce the tape recording, an offer should be made during the defendants' case in chief. Both the government's offer and this suggestion were apparently unacceptable to defense counsel who moved for a mistrial. The court denied defense counsel's motion and directed the case to proceed. During the cross-examination of a subsequent Secret Service Agent, defense counsel inquired into the existence of a tape recording of a "Wuensche—Reifler" telephone conversation. Upon receiving an affirmative response, defense counsel requested leave to play the tape recording to the jury. The government objected and the court sustained the objection.

Defense counsel now contend that the government's action in excising the "Jencks Act" statement and withholding the additional recorded telephone conversation, and the court's refusal to permit · the jury to hear this recorded conversation were so violative of the defendants' rights as to require a new trial. The court must once again disagree.

First, since this communication was lawfully monitored and recorded under 18 U.S.C. § 2511(2) (c) and did not involve statements or admissions of the defendants, a serious question exists as to whether the defendants were properly entitled to discover this recording. However, the court need not address itself to that question since the government made the tape recording available to defense counsel during the course of the trial for whatever use counsel deemed appropriate. The Court did not permit defense counsel to play this recording to the jury at the time that the request was made because it was clear that this was another attempt by defense counsel to affirmatively introduce evidence under the guise of cross-examination in order to preserve the opportunity of making the final closing argument to the jury. Even if this recording had been affirmatively offered by defense counsel as defendants' evidence, with the result, of course, being that the defendants would be bound by its contents, the question would nevertheless remain as to whether this recording fell within one of the recognized exceptions to the hearsay rule and therefore could properly be *admitted* into evidence. Far from being *precluded* from introducing evidence, defense counsel cautiously guarded against it. As such, defense counsel cannot now challenge the obvious result of a deliberate choice of trial strategy.

After carefully reviewing the entire record in light of the foregoing considerations, the court concludes that the defendants received a fair trial and accordingly will deny their motion for new trial.