**Joseph DUNBAR, Petitioner-Appellant,**

v.

**David R. HARRIS, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.**

No. 1373, Docket 79–2081.

United States Court of Appeals, Second Circuit.

Argued Aug. 15, 1979.

Decided Dec. 21, 1979.

Barry Bassis, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellant.

Robert M. Nigro, Asst. Dist. Atty., Denis Dillon, Dist. Atty., Nassau County, Mineola, N. Y., for respondent-appellee.

Before MESKILL, Circuit Judge and KELLEHER and COFFRIN, District Judges.*

COFFRIN, District Judge:

This is an appeal from the denial of a petition for habeas corpus. Appellant was convicted after a jury trial in Nassau County Court of three counts of criminal sale of a controlled substance and six counts of possession of the same. The charges arose from three sales of cocaine to an undercover policeman.

The appellate division reversed the possession convictions and affirmed the sale convictions. Leave to appeal the sale convictions to the court of appeals was denied.

Appellant thereafter filed a petition for habeas corpus in the District Court for the Southern District of New York. In an unreported opinion, Judge Knapp denied the petition but subsequently granted a certificate of probable cause for appeal from that denial.

In the district court, appellant claimed, among other things not in issue here, that his right to cross-examine a prosecution witness was unconstitutionally limited when the witness refused on fifth amend-

ment grounds to answer several of defense counsel's questions. The trial court denied appellant's motion to strike the direct testimony of the witness. On petition for habeas corpus, the district court ruled that appellant's sixth amendment rights were not infringed when the witness invoked his fifth amendment privilege on cross-examination and the trial court allowed his direct testimony to stand. That ruling of the district court is the only assignment of error on this appeal.

For the reasons stated below, we affirm the decision of the district court.

At appellant's trial, the prosecution offered the testimony of an informer named Burks, who had agreed to cooperate with the government in return for a recommendation of probation on an unrelated pending drug charge. The substance of his direct testimony was that he introduced an undercover policeman, Detective Mazyck, to appellant and observed the first of the three sale transactions for which appellant was convicted; he did not participate in the two subsequent transactions between Mazyck and appellant. Burks was the only witness to corroborate Mazyck's in-court identification of appellant. He admitted on direct examination that he was, at the time of trial, under indictment for selling heroin, that his activity as an informer was in return for a recommendation of leniency on that charge and that he had served a total of three years and four months for convictions of assault, robbery and attempted rape.

On cross-examination, Burks claimed his privilege against self-incrimination in response to seven of defense counsel's questions.[1]

Q: Did you ever go to 59 Woods Avenue and buy cocaine?
A: I refuse to answer.
(Tr. 161).
Q: Okay. Now, from the time you talked to Mr. McKenna last year sometime, and April 16th, 1975, did you ever go to Woods Avenue and see Joe?
A: I refuse to answer on the ground it might incriminate me.
(Tr. 162).

---

* Hon. Robert J. Kelleher, United States District Judge, Central District of California, and Hon. Albert W. Coffrin, United States District Judge, District of Vermont, sitting by designation.

1. Q: Did you ever go to 59 Woods Avenue before that, before April 16th?
   A: Yes.
   Q: Did you go there to buy Drugs?
   A: No. I refuse to answer that question. I might incriminate me.

When the examination of Burks was concluded, appellant's counsel moved to strike all of his testimony on the ground that Burks claimed his fifth amendment right on an issue directly related to the case.[2] The trial court denied the motion. On this appeal, appellant claims that the questions Burks refused to answer went to the central issue of identification of appellant as the seller of the cocaine; appellee contends that the questions were collateral and that, therefore, Burks's refusal to answer did not infringe appellant's sixth amendment rights.

■ There is no dispute as to the law to be applied in this case. The confrontation clause of the sixth amendment guarantees a criminal defendant the right to cross-examine witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). If a defendant's cross-examination is restricted by the competing fifth amendment right of a witness, it may be necessary to strike the direct testimony of that witness. *See, e. g., United States v. Frank,* 520 F.2d 1287, 1292 (2d Cir. 1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *United States v. Newman,* 490 F.2d 139, 146 (3d Cir. 1974). This court set forth the test for deciding whether a trial court must strike the direct testimony in such circumstances in *United States v. Cardillo,* 316 F.2d 606 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963):

> Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part.

*Id.* at 611 (citations omitted).

This test has continued to meet with approval in subsequent decisions in this circuit, *United States v. DiGiovanni,* 544 F.2d 642, 645 (2d Cir. 1976); *United States v. Frank,* 520 F.2d 1287, 1292 (2d Cir. 1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *United States v. Dono,* 428 F.2d 204, 209 (2d Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970); and elsewhere, *United States v. LaRiche,* 549 F.2d 1088 (6th Cir.), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977); *United States v. Newman,* 490 F.2d 139 (3d Cir. 1974); *Wisconsin v. Gagnon,* 497 F.2d 1126 (7th Cir. 1974); *United States*

---

Q: No? You never bought cocaine from that house before?

A: I refuse to answer that question on the grounds it might incriminate me. (Tr. 163).

Q: Did you ever make any buys from Mr. Dunbar without the presence of the police?

A: I refuse to answer that question on the ground it may incriminate me. (Tr. 166).

Q. Did you tell anybody two days ago that you made two buys from Joe by yourself and destroyed the coke?

A: I refuse to answer that question on the ground it might incriminate me. (Tr. 166–67).

Q: You refuse to answer whether or not you ever bought coke from Joe before that; right.

A: Yes. (Tr. 169).

---

**2.** Mr. Vergatta: I now have a motion, your Honor.

The Court: What is your motion?

Mr. Vergatta: Motion to strike his testimony. He took the Fifth Amendment on an issue directly related to this case, and that's directly in contradiction to the law of the State of New York.

The Court: My recollection is that he did not take his Fifth Amendment on anything involved in this particular case.

Mr. Vergatta: I asked him if he ever bought coke from this man before, and he took the Fifth Amendment. That's related to this case, Judge.

The Court: Oh, no, it isn't.

Mr. Vergatta: Well, I have my exception.

The Court: Your application is denied. (Tr. 172).

*v. Ginn*, 455 F.2d 980 (5th Cir. 1972) (per curiam); *United States v. Norman*, 402 F.2d 73 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970); *United States v. Smith*, 342 F.2d 525 (4th Cir.), *cert. denied*, 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965); *Coil v. United States*, 343 F.2d 573 (8th Cir.), *cert. denied*, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965).

Appellant concedes that *Cardillo* sets forth the test that controls in this case, but asserts that the district court applied it incorrectly. *Cardillo* demands an inquiry into whether the matter sought to be explored on cross-examination is "collateral." Since the correctness of the district court's resolution of this inquiry is the issue on this appeal, an examination of the facts of *Cardillo* and other cases is helpful.

*Cardillo* involved the testimony of two witnesses. The first, Ohrynowicz, refused to answer questions about the commission of past crimes or pending charges. This court ruled that these questions related solely to the witness's credibility, not to the subject of his direct testimony. *Cardillo*, 316 F.2d at 611. Since the trial court had already been apprised of the witness's substantial criminal record and pending charges, there was no prejudice to defendant in the trial court's refusal to strike Ohrynowicz's direct testimony. *Id.* A similar conclusion was reached in *United States v. Norman*, 402 F.2d 73, 76–77 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970), in which a witness who had previously revealed his prior convictions and pending charges refused to admit drug dealings other than those that were the subject of litigation. The undisclosed dealings were deemed collateral, because they were unrelated to the details of direct testimony. *See United States v. Ginn*, 455 F.2d 980 (5th Cir. 1972) (per curiam) (source of televisions sold by witness irrelevant to charge that defendant purchased them with counterfeit money).

The second witness in *Cardillo*, Friedman, declined on cross-examination to reveal the source of $5,000 he claimed to have given defendant in a stolen furs transaction. A panel of this court ruled that the information sought by this inquiry was not collateral. The witness was not a wealthy man, and there was doubt whether he had in fact given such a sum to defendant. 316 F.2d at 611–13. Under these circumstances, this court ruled that the witness's refusal to identify the source of the money more definitely than "a friend" denied defendant the opportunity to cross-examine with respect to events that were the subject of direct testimony.[3] *Id.*

Consistent with this reasoning is *United States v. Newman*, 490 F.2d 139 (3d Cir. 1974), in which the subject of cross-examination was illegal wiretaps that the witness had installed but for which defendant was not charged. Since the government alleged a "partnership" between defendant and the witness, these independent acts of the witness were not collateral, and his refusal to answer required a partial striking of his direct testimony. *Id.* at 145–46.

■ If the purpose of cross-examination is to explore more than general credibility, the subject of inquiry is not collateral. *United States v. Garrett*, 542 F.2d 23, 26 (6th Cir. 1976). The question is whether the defendant's inability to examine the witness precludes defendant from testing the truth of the witness's direct testimony, *Fountain v. United States*, 384 F.2d 624, 628 (5th Cir.), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968), or whether the "answers solicited might have established untruthfulness with respect to specific events of the crime charged." *Cardillo*, 316 F.2d at 613.

■ Turning to the instant case, we note at the outset that the witness, Burks, asserted his privilege in response to seven questions.[4] Six of these requested Burks to

---

**3.** *Cf. Fountain v. United States*, 384 F.2d 624 (5th Cir.), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). The source of money used by the witness to travel extensive-

ly following appellant's arrest was not directly in issue and was therefore collateral.

**4.** *See* note 1 *supra.*

disclose his involvement in drug dealings other than those for which appellant was charged; one asked whether he had seen appellant at the location of the three subject transactions prior to the sale in which Burks participated. Burks was otherwise responsive to defense counsel's questions and candid about his pending charges and his agreement with the district attorney.

Appellant contends that these questions did not relate merely to Burks's credibility, but bore specifically on Burks's identification of appellant as the cocaine dealer he introduced to Detective Mazyck. We cannot agree with appellant.

Information about Burks's personal drug dealings related neither to the crimes for which appellant was charged nor to Burks's direct testimony; in that sense those dealings were collateral. *See, e. g., United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972); *United States v. Norman*, 402 F.2d 73, 76–77 (9th Cir. 1968), *cert. denied*, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970).

Nevertheless, we proceed to consider appellant's claim that these questions related to Burks's identification of appellant, the very substance of his direct testimony. The weakness in Burks's identification derived from his failure to notice a scar on appellant's arm. This was demonstrated in court when Burks related seeing appellant twice prior to the first transaction with Detective Mazyck, without noticing appellant's obvious scar. It was, however, only with respect to the purpose of prior meetings with appellant that Burks refused to testify; he did not deny prior contact with appellant. Burks's assertion of his fifth amendment right to decline to testify about unrelated drug dealings did not foreclose appellant from inquiring into Burks's failure to notice appellant's scar.[5] The asserted purpose of these questions had been accomplished in open court without an infringement of Burks's fifth amendment rights. Appellant therefore was not precluded from testing on cross-examination the truth of Burks's direct testimony. *Fountain*, 384 F.2d at 628; *Cardillo*, 316 F.2d at 613.

Finally we consider Burks's refusal to answer the one question that did not demand a direct admission of unrelated drug dealings. We note that the fifth amendment privilege extends beyond answers that would in themselves support a conviction to "'those which would furnish a link in the chain of evidence needed to prosecute.'" *Malloy v. Hogan*, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964) (quoting *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)). Burks refused to say whether prior to the events he described in his direct testimony he had been to the Woods Avenue location of the three subject transactions. We are unable to conclude that an answer to this question could not possibly tend to incriminate Burks. *Hoffman*, 341 U.S. at 488, 71 S.Ct. 814. Furthermore, defense counsel's very next question disclosed the substance of the answer sought by this inquiry.[6]

We conclude that Burks properly invoked his fifth amendment privilege in response to the questions in issue here, that the information these questions sought was collateral under the *Cardillo* test and that appellant was not entitled to have Burks's direct testimony stricken. We affirm the denial of appellant's petition for habeas corpus.

---

**5.** Had defense counsel framed questions that did not require Burks to acknowledge past drug transactions, it is unlikely that the witness would have invoked his privilege against self-incrimination.

**6.** Q: Did you ever go with anybody else to 59 Woods Avenue to talk to Joe?

A: No.
Q: No?
A: No.
Q: Did you every go by yourself?
A: No.
(Tr. 163).