Nappi v. Yelich

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2014

(Submitted: June 19, 2015     Decided: July 15, 2015)

Docket No. 14-2201

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONATO NAPPI,

Petitioner-Appellant,

- v.-

BRUCE YELICH, SUPERINTENDENT,
BARE HILL CORRECTIONAL FACILITY,

Respondent-Appellee.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Before:          JACOBS, CALABRESI, and LYNCH, Circuit Judges.

Donato Nappi appeals from a judgment of the United States District Court

for the Northern District of New York (Singleton, Jr., J.), denying his petition for a

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court issued a certificate of appealability on a single issue: whether habeas relief is warranted on the ground that Nappi's Confrontation Clause right was violated by the state trial court's order precluding Nappi from cross-examining his wife, the main witness against him at trial, about her motive for testifying against him.

The state appellate court ruled that the limitation was a proper exercise of the trial court's discretion to limit questioning regarding collateral matters. We hold that this was contrary to clearly established Supreme Court precedent. We further conclude that this Confrontation Clause violation deprived Nappi of a fair trial, and cannot be deemed harmless.

Accordingly, we reverse and remand the judgment of the district court. On remand, the district court shall issue a writ of habeas corpus to Nappi by the thirtieth calendar day after the issuance of our mandate unless the state has, by that time, taken concrete and substantial steps expeditiously to retry Nappi. The mandate shall issue in ten days.

Christopher J. Pelli, Utica, New York, for Appellant.

2

Lisa Ellen Fleischmann, Assistant Attorney General (with Barbara D. Underwood, Solicitor General, and Nikki Kowalsi, Deputy Solicitor General for Criminal Matters, on the brief) for Eric T. Schneiderman, Attorney General of the State of New York, New York, New York, for Appellee.

DENNIS JACOBS, Circuit Judge:

Donato Nappi was convicted, after a jury trial in New York's Herkimer County Court, of Criminal Possession of a Weapon in the Third Degree. At the time of his arrest, Nappi was on parole after having served a long sentence for a prior, unrelated crime. His wife, Janice Nappi, reported Nappi's gun possession to his parole officer and was the key witness against him at trial.

Nappi was tried twice for the crime at issue on this appeal. At his first trial, which ended in a hung jury, Nappi cross-examined his wife about her motive for reporting him and testifying against him: he suggested that she wanted to continue a relationship with another man, whom she had recently-- and secretly--bailed out of jail. At the second trial, which ended in conviction, the court sustained the state's relevance objection to this line of inquiry. The Appellate Division concluded that the trial court properly precluded the inquiry.

3

Nappi raised a host of challenges to his conviction in a habeas petition filed in the United States District Court for the Northern District of New York (Singleton, Jr., J.). Among them was the argument that his rights to confrontation and a fair trial were violated because the state trial court prevented him from probing his wife's motive to implicate him in the gun possession charge: her relationship with another man. The district court denied relief, concluding that the high threshold for relief under the Antiterrorism and Effective Death Penalty Act of 1996 was not satisfied. The court issued a certificate of appealability only as to Nappi's Confrontation Clause challenge.

We conclude that the limitation imposed on Nappi's ability to cross-examine the key witness against him at trial was contrary to clearly established Supreme Court Confrontation Clause jurisprudence. We further conclude that this Confrontation Clause violation was not harmless.

**BACKGROUND**

At the time of his arrest, Nappi and his wife had been married for 36 years, of which time he spent 26 years in prison after his conviction for an unrelated crime. (Trial Tr., New York v. Nappi, 09-037, at 254 (Feb. 23, 2010) ("Trial Tr.").)

4

Upon his release, Nappi returned to live with his wife; but since they "really weren't that close" anymore, they slept in separate bedrooms, and hers was often kept deadbolted. (A. 114; Trial Tr. at 300-01, 304-04.)

Before Nappi was released, Janice was informed by Nappi's parole officer that no firearms could be kept in the home as a condition of his parole. (A. 114.) Nevertheless, Janice testified that she helped Nappi retrieve a gun from a family home and bring it back to their residence. (Trial Tr. at 271-72.) She maintained that she agreed to allow the gun into the home on condition that she would store the gun without telling Nappi where she had put it, and he would separately keep the ammunition. (Id. at 230, 274-76.)

Several months after Nappi's release, parole officer Jeffrey Stewart visited the Nappis' home for an unannounced but routine visit, which did not cause Stewart to raise any questions about Nappi's compliance with the conditions of his release. (Id. at 278-79.) The following day, Janice called Stewart and reported that Nappi had a weapon in the house. (Id. at 279-81.) In a conversation between Stewart and Janice prior to the search for the weapon and Nappi's ensuing arrest, Janice confirmed to Stewart that the weapon was still there. (Id. at 205.) Stewart, according to trial testimony, "decided it would be best for [Janice] to move that

5

weapon," which she had previously stored in her bedroom, and "told her to move it to the bed area or under the bed" in another unused bedroom. (Id. at 205-06, 275-76.) This decision was made purportedly for officer safety, though Janice informed Stewart that Nappi did not know where the gun was being kept because the Nappis had agreed that she would hide it from him. (Id. at 230, 277.) A search of the Nappis' home revealed a gun, located in the spare bedroom and wrapped in a "dingy" old towel or "rag." (Id. at 183, 215-16, 350, 427.)

Nappi was tried in state court twice on the gun possession charge; the first trial ended with a hung jury. During the first trial, Nappi's defense was that Janice had framed him because she wanted him back in prison so that she could conduct a romantic relationship with a man named Del Dyman. As a basis for this defense theory, counsel cross-examined Janice about the fact that, shortly after her husband's arrest, she had secured Dyman's release on $50,000 bail using her house as collateral. The prosecution argued that Janice had no reason to falsely implicate Nappi, as she could have revoked her permission for him to live with her at any time, and had remained married to Nappi during his lengthy incarceration.

6

Before the second trial, the government moved to exclude any mention of the fact that Janice arranged for a bail bond to be posted for Dyman. The trial court declined to rule in limine on this issue but, at trial, sustained the government's objections to defense counsel's attempt to cross-examine Janice about her relationship with Dyman, including her posting of bond for him. Defense counsel requested an opportunity to make an offer of proof, emphasizing to the court that "the entire defense was based on the fact that we believed that the gun was planted by Ms. Nappi," and that because he had been precluded from substantiating this theory, Nappi had "been denied his constitutional right to present a defense" and the court should "either dismiss the charges or declare a mistrial." (Id. at 450.)

Although the trial judge indicated that he was "not changing [his] mind," (id. at 311), defense counsel made the following offer of proof, which he represented was supported by "conversations that [he] had with [his] client," the "research [he had] . . . done in this case," and "circumstantial evidence":

- He would cross-examine Janice about whether her relationship with Dyman motivated her to plant the gun that formed the basis for Nappi's prosecution;

7

- He would call Dyman, who "would be able . . . to personally answer the question as to whether or not he had a romantic relationship [at] any time" during Nappi's incarceration;

- He expected that if Janice testified that she did not have a romantic relationship with Dyman, that Dyman's testimony would "contradict her";

- He would introduce evidence that Janice mortgaged her "only house" to raise Dyman's $50,000 bail; and

- Janice sought information from an attorney "about how to go about bailing Del Dyman out, but . . . she wanted it to remain completely secret."[2]

(Id. at 458-59.)  Counsel explained that he would have used these suggestive pieces of information to support Nappi's only defense at trial:  Janice planted the gun to put her husband back in prison, which she was motivated to do because of her relationship with Dyman.

The state took the position that "[t]here should be no reference to any other male friends or boyfriends that she may or may not have had," because the

---

[2] Defense counsel also sought to impeach Janice by introducing evidence that she had engaged in acts of prostitution.  (Trial Tr. at 459-60.)  The state and district courts rejected any challenge to Nappi's conviction based on the ruling precluding this line of cross-examination and preventing Nappi from calling a witness on this subject.

8

defense evidence was "[c]learly collateral . . . and immaterial to why we're here." (Id. at 451)  As the state blandly explained, Janice had "already testified [to] what her motive was for coming forward to the police here.  She testified her motive was that she was afraid for her life, and there's no other motive of record or in existence."  (Id.)  The trial court agreed.  (Id. at 461.)

Nappi was convicted and the Appellate Division affirmed.  In rejecting defendant's Confrontation Clause challenge, the Appellate Division concluded that the trial court acted within its discretion to limit cross-examination on collateral matters.  People v. Nappi, 922 N.Y.S.2d 669, 671-72 (N.Y. App. Div. 4th Dep't 2011).  In considering Nappi's petition for a writ of habeas corpus, the district court regarded the exclusion of evidence relating to Janice's relationship with Dyman as a "close[] issue," and recognized that this Court has "cautioned that the preclusion of motive evidence may present a strong argument that a constitutional violation has occurred."  Nappi v. Yellach, No. 12-cv-01193-JKS, 2014 WL 2434805, at *14 (N.D.N.Y. May 30, 2014) (internal quotation marks omitted).  The district court nevertheless concluded that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "preclude[d] . . . granting habeas relief on this claim."  Id. at *15.

9

Under AEDPA's deferential standard for evaluating state court decisions, Nappi's application for a writ of habeas corpus may only be granted if the state court's ruling denying his opportunity to cross-examine his wife about her relationship with Dyman "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We consider here whether the state court's ruling was contrary to clearly established Confrontation Clause jurisprudence.

"The phrase 'clearly established federal law, as determined by the Supreme Court of the United States' refers to the holdings . . . of the Supreme Court's decisions as of the time of the relevant state-court decision. A state court decision is contrary to such clearly established federal law if it applies a rule that contradicts the governing law set forth in the Supreme Court's cases." Lewis v. Conn. Comm'r of Corr., --- F.3d ---, 2015 WL 3823868, at *8 (2d Cir. June 22, 2015) (some internal quotation marks, citations, and alterations omitted). "Moreover, for habeas to be warranted, the trial court's denial must not have been harmless, that is, it must have had a substantial and injurious effect or influence in

10

determining the jury's verdict." Alvarez v. Ercole, 763 F.3d 223, 230 (2d Cir. 2014) (concluding Confrontation Clause violation contravened clearly established law and was not harmless, observing "trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)," and affirming grant of habeas relief).

Upon de novo review of the district court's denial of Nappi's application for habeas relief, see Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001), we conclude that the state court's ruling--that cross-examination as to Janice's motive was a collateral matter--was contrary to clearly established law and not harmless.

I

The Sixth Amendment's confrontation right, which applies equally to defendants in state prosecutions, "means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S. 308, 315 (1974). It includes a right of cross-examination, which provides "the principle means by which the believability of a witness and the truth of his [or her] testimony are tested." Id. at 316; see also Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (explaining Confrontation Clause right is "designed to prevent improper restrictions on the

types of questions that defense counsel may ask during cross-examination"). To be sure, a trial judge has discretion to limit or preclude inquiry into collateral, repetitive, or "unduly harassing" subjects. Davis, 415 U.S. at 316. But this discretion has limits and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id. at 316-17.

The state court's conclusion that cross-examination of the state's main witness' motive for testifying was a collateral matter was contrary to clearly established Supreme Court precedent. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1989) (ruling that preventing cross-examination on a subject the "jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony" violated the defendant's Confrontation Clause right); Brinson v. Walker, 547 F.3d 387, 392 (2d Cir. 2008) ("It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." (citing cases)).

12

In <u>Olden v. Kentucky</u>, defendants were prosecuted for, among other things, rape; the defense was consent and that the victim had a motive to lie to conceal her extramarital relationship. 488 U.S. 227, 228-30 (1988) (per curiam). The state court prevented defendant from exposing this alleged motive to lie, but the Supreme Court concluded that this ruling "failed to accord proper weight to petitioner's Sixth Amendment right to be confronted with the witnesses against him." <u>Id.</u> at 231 (internal quotation marks omitted). Here, as in <u>Olden</u>, the testimony of a witness whose motive was at issue was "central, indeed crucial, to the prosecution's case." <u>Id.</u> at 233.

"If the purpose of cross-examination is to explore more than general credibility, the subject of inquiry is not collateral." <u>Dunbar v. Harris</u>, 612 F.2d 690, 693 (2d Cir. 1979). "The question is whether the defendant's inability to examine the witness precludes defendant from testing the truth of the witness's direct testimony, or the whether answers solicited might have established untruthfulness with respect to specific events of the crime charged." <u>Id.</u> (internal citations and quotation marks omitted). The testimony at issue cannot be deemed collateral or immaterial: As defense counsel argued before the trial

13

court, it was Nappi's "entire defense," (Trial Tr. at 450), and was "designed to show a prototypical form of bias" against Nappi, Van Arsdall, 475 U.S. at 680.

## II

In evaluating whether the limitation of Nappi's cross-examination was harmless error, we consider (i) the strength of the state's case, (ii) the importance of Janice's testimony, (iii) whether the excluded testimony would have been cumulative, (iv) the presence of evidence that would have corroborated the testimony, and (v) the extent of the cross-examination that was permitted. See Van Arsdall, 475 U.S. at 684 (listing factors to determine whether state court's exclusion of evidence was harmless error); see also Alvarez, 763 F.3d at 233.

Janice's testimony was all in all at trial. The gun was located in their shared home after her report to Nappi's parole officer, and the state's case rose and fell on her credibility. At the earlier trial, defense counsel was permitted to raise questions about Janice's motive for calling Nappi's parole officer, reporting the gun, and testifying against him. That trial ended in a hung jury. Moreover, the motive testimony might well have raised questions for the jury about the inferences it should draw from (for example) Janice's testimony that she brought

14

the gun to the Nappis' home; that she had the gun in her bedroom, which she did not share with Nappi, and often kept locked; and that she moved the gun after alerting Stewart to its presence.

The testimony that was the subject of defense counsel's offer of proof was not cumulative. This was not a case in which Janice's motive to lie was, in any event, evident. Cf. Corby v. Artus, 699 F.3d 159, 167 (2d Cir. 2012) (concluding "state trial court did not abuse its discretion in limiting [defendant's] cross-examination" because the defendant was otherwise "able to show that [the witness] had a motive to lie to deflect the investigators' attention from herself"). To the contrary, perhaps made cautious by the earlier hung jury, the state elicited testimony intended to show that Janice had no such motive because she took steps to try to expedite Nappi's release from incarceration for his prior conviction. (Trial Tr. at 191.) If anything, a jury would view a spouse as partial to the defendant.

Such cross-examination of Janice as was permitted (on other topics) was not an "opportunity for *effective* cross-examination," Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis added and omitted), because the trial

15

court's ruling "deprived [Nappi] of evidence essential to his primary defense,"

Alvarez, 763 F.3d at 233.[3]

If defense counsel had been permitted to elicit testimony establishing that Janice had a motive to implicate Nappi in the illegal possession of a weapon-- which she knew was a violation of his parole--this would have been "of significant importance," and the exclusion of this evidence "could certainly have rendered the verdict questionable." Justice v. Hoke, 90 F.3d 43, 48 (2d Cir. 1996).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in

---

[3] This is not to say--especially under AEDPA's deferential standards--that because she was the state's star witness, the trial court was required to permit any attempt to impeach Janice or risk running afoul of the Confrontation Clause. Quite to the contrary, it is well-settled that a trial judge has broad discretion to prevent a defendant from calling witnesses for impeachment purposes on collateral matters, and also to limit cross-examination on subjects that are, for example, "only marginally relevant" or intended to harass a witness. Van Arsdall, 475 U.S. at 679. Defense counsel's proposed inquiry into Janice's alleged acts of prostitution was unquestionably collateral, and it was a proper exercise of discretion to bar this line of questioning and to prevent defense counsel from calling a witness to testify on this subject. See Corby, 699 F.3d at 166. Moreover, this line of questioning would not have been probative of Nappi's theory of the case; it would not have illuminated Janice's motive for testifying against him. Cf. Fuller v. Gorczyk, 273 F.3d 212, 221 (2d Cir. 2001) (finding no Confrontation Clause violation based on state court's "fail[ure] to guess a theory of relevance that was not argued").

16

the context of an adversary proceeding before the trier of fact." Lilly v. Virginia, 527 U.S. 116, 123-24 (1999) (internal quotation marks omitted). But here the trial court accepted the state's untested arguments that Janice had already testified as to her motive, and that the defense theory raised a collateral matter. As a result, counsel was "unable to make a record" to support Nappi's sole defense. Davis, 415 U.S. at 318.

Because we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error," we cannot deem the constitutional violation harmless. Kotteakos v. United States, 328 U.S. 750, 765 (1946) (explaining that the "inquiry cannot be merely whether there was enough [evidence] to support the result" but is rather "whether the error itself had substantial influence"); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (affirming that the standard articulated in Kotteakos remains the appropriate one in a § 2254 proceeding).

## CONCLUSION

For the foregoing reasons, we reverse and remand the case to the district court. The court shall issue a writ of habeas corpus to Nappi by the thirtieth

17

calendar day after the issuance of our mandate unless the state has, by that time, taken concrete and substantial steps to retry Nappi. The mandate shall issue in ten days.