**14-193-pr**
*Lewis v. Connecticut Commissioner of Correction*

# In the

# United States Court of Appeals

# For the Second Circuit

———

AUGUST TERM, 2014

ARGUED: OCTOBER 22, 2014
DECIDED: MAY 14, 2015
AMENDED: JUNE 22, 2015

No. 14-193-pr

SCOTT LEWIS,
*Petitioner-Appellee,*

*v.*

CONNECTICUT COMMISSIONER OF CORRECTION,
*Respondent-Appellant.*

———

Appeal from the United States District Court
for the District of Connecticut.
No. 3 Civ. 196 – Charles S. Haight, Jr., *Judge.*

———

Before: WINTER, WALKER, and CABRANES, *Circuit Judges.*

———

In 1990, a jury convicted Petitioner Scott Lewis of murdering

Ricardo Turner and Lamont Fields. The government's case against

Lewis depended almost entirely on the testimony of its key witness—Ovil Ruiz. At the time of Lewis's trial, however, the State failed to disclose to the defense that Ruiz had repeatedly denied having any knowledge of the murders and only implicated Lewis after a police detective promised to let Ruiz go if he gave a statement in which he admitted to being the getaway driver and incriminated Lewis and another individual, Stefon Morant. Lewis now seeks habeas relief on the grounds that the State of Connecticut denied his constitutional right to a fair trial when it withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The United States District Court for the District of Connecticut (Charles S. Haight, Jr., *Judge*) granted Lewis's habeas petition on the basis of the *Brady* violation. We agree with the district court and AFFIRM the grant of habeas corpus.

————

> BRETT DIGNAM (Elora Mukherjee, *on the brief*), Morningside Heights Legal Services, Inc., New York, N.Y., *for Petitioner-Appellee.*
>
> MICHAEL PROTO, Office of the Chief State's Attorney, Rocky Hill, C.T., *for Respondent-Appellant.*

_____

JOHN M. WALKER, JR., *Circuit Judge*:

In 1990, a jury convicted Petitioner Scott Lewis of murdering Ricardo Turner and Lamont Fields. The government's case against Lewis depended almost entirely on the testimony of its key witness—Ovil Ruiz. At the time of Lewis's trial, however, the State failed to disclose to the defense that Ruiz had repeatedly denied having any knowledge of the murders and only implicated Lewis after a police detective promised to let Ruiz go if he gave a statement in which he admitted to being the getaway driver and incriminated Lewis and another individual, Stefon Morant. Lewis now seeks habeas relief on the grounds that the State of Connecticut denied his constitutional right to a fair trial when it withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The United States District Court for the District of Connecticut (Charles S. Haight, Jr., *Judge*) granted Lewis's habeas petition on the basis of the *Brady* violation. We agree with the district court and AFFIRM the grant of habeas corpus.

**BACKGROUND**

On October 11, 1990, Ricardo Turner and Lamont Fields were shot and killed in their apartment at 634 Howard Avenue in New Haven, Connecticut. The State charged Scott Lewis and Stefon Morant with the murders and tried them separately in Connecticut Superior Court. Morant was tried first and convicted of both murders.

## I.   Lewis's Trial

At trial, the State did not introduce any eyewitness testimony or forensic evidence against Lewis. The government's key witness, Ovil Ruiz, was the only witness who directly implicated Lewis in the murders. Ruiz testified at trial, in substance, as follows.  On the night of the murders, Ruiz drove Lewis and Morant to 634 Howard Avenue and waited in the car while they went inside. While he was waiting, he heard gunshots.  Lewis and Morant then returned to the car with gym bags containing drugs and cash. Ruiz later overheard a conversation in which Lewis admitted to shooting Turner and

Fields. And two to three weeks after the murder, Ruiz saw Lewis throw a gun into the river near the Chapel Street Bridge.

On May 10, 1995, the jury convicted Lewis on two counts of murder and two counts of felony murder, one as to each victim. The Superior Court sentenced Lewis principally to 120 years' imprisonment. On direct appeal, the Supreme Court of Connecticut affirmed Lewis's convictions for the murders but vacated his felony murder convictions on double jeopardy grounds. *See State v. Lewis*, 245 Conn. 779 (1998).

## II.   Subsequent Testimony

On October 25 and 26, 1999, Michael J. Sweeney, a 37-year veteran of the New Haven Police Department ("NHPD")—and one of two police detectives who questioned Ruiz on the night he first implicated Lewis—provided critical information concerning the circumstances in which Ruiz inculpated Lewis at the police station on January 13-14, 1991. At the hearing on Morant's motion for a new

trial before the Honorable Judge Jon C. Blue of the Connecticut

Superior Court,[1] Sweeney testified as follows.

Detective Vincent Raucci arrested Ruiz in connection with

another murder on January 13, 1991 and brought him to the New

Haven police station. Sweeney, Raucci's supervising officer, first

questioned Ruiz about the Fields-Turner murders. Ruiz said he did

not know anything about them. Then, Sweeney and Raucci jointly

interviewed Ruiz, who repeated that he had no information about

these murders and was not at the murder scene.

Raucci then began telling Ruiz the facts of the Fields-Turner

case. Raucci described where the murders occurred, the apartment

building, and a scenario in which the murderers escaped with guns

in a gym bag. At that point, Sweeney asked Raucci to step outside

and told him that his interrogation approach was inappropriate.

When the detectives returned to the interrogation, Raucci told Ruiz

---

[1] In this separate proceeding, Judge Blue denied Morant's motion for a new trial based on his conclusion that there was extensive independent evidence implicating Morant in the murders. *See Morant v. State*, No. 398736, 2000 WL 804695 (Conn. Super. Ct. June 5, 2000), *aff'd*, 68 Conn. App. 137 (2002). This decision regarding Morant is not before us. Relevant here, however, Judge Blue determined at that hearing that Sweeney was a credible witness, and that the testimony recounted below should be credited.

that "he would let him go," and that he wanted him to say "that he was driving the car that night." S.A. 443. Raucci also warned Ruiz "that it was in his best interest to tell what happened [and] give a detailed statement as to his participation and also the other two." S.A. 443. At that point, Ruiz started changing his statement.

Sweeney again took Raucci outside and told him to "knock it off." S.A. 444. Specifically, Sweeney told Raucci "don't tell [Ruiz] parts of the case and then five minutes later let him parrot what you're saying and take it as fact." S.A. 444. When Judge Blue asked Sweeney to clarify what information Raucci gave Ruiz, Sweeney said, among other things, that Raucci told Ruiz "that he was present with the two individuals, Scott Lewis and Stefon Morant." S.A. 460. On cross-examination, Sweeney acknowledged that police officers frequently divulge certain facts in order to extract additional information from a potential suspect, but explained that Raucci was "detailing the whole case" to Ruiz, S.A. 414, rather than telling him "a little to get a lot," S.A. 337.

Sweeney was then pulled away on another matter, so Raucci interviewed Ruiz alone. When Sweeney returned, Raucci told him that Ruiz wanted to give a detailed statement about his involvement in the murders. Concerned by the significant change in Ruiz's story, Sweeney spoke to Ruiz alone and asked him if he was "truthful in stating that these two persons were there and [he] drove the car." S.A. 446. Ruiz said "no . . . . [h]e was not telling the truth,"　he "knew nothing," and "the information he did give . . . . was all information gathered from Detective Raucci." *Id.* Significantly, Ruiz told Sweeney that he changed his story "because Detective Raucci said he was gonna let him go." *Id.*

Sweeney, again, confronted Raucci. At Raucci's request, Sweeney gave Raucci one final opportunity to interview Ruiz alone. After that interview, Raucci told Sweeney that Ruiz wanted to say that he "overheard these two people talking about the case, that he wasn't present." S.A. 446. At that late point in the evening, Sweeney thought that "might be true," so he told Raucci to take the statement.

S.A. 446-47. Shortly thereafter, Sweeney's shift ended, and he did

not see Ruiz again.

In 1998, Sweeney retired from the NHPD and volunteered to

serve as a U.N. station commander, supervising police officers in

post-war Bosnia.  When he returned to the United States, he read in

a local newspaper that Raucci had resigned from the NHPD because

of misconduct. Specifically, Raucci was linked to the New Haven

drug trade; charged with larceny following an internal NHPD

investigation; arrested for a domestic-violence incident; and, after

fleeing Connecticut as a result of the charges against him, was

ultimately arrested by the Federal Bureau of Investigation ("FBI")

after a four-hour standoff in New Mexico. Sweeney later testified

during an evidentiary hearing on Lewis's federal habeas petition

that he came forward because he felt Ruiz was "absolutely

untruthful," A. 39, and that the story implicating Lewis and Morant

was "fabricated," S.A. 37.[2]  At Lewis's trial in 1990, the prosecution

---

[2] We also note that Sweeney's testimony corroborates evidence obtained by the FBI during an investigation of Raucci's conduct. That evidence, which we do not take into consideration in deciding Lewis's habeas petition, includes a  letter Ruiz wrote to the FBI on August 24, 1999 in which he wrote that he "set up"

failed to disclose to the defense any of the circumstances of Ruiz's

police interrogation to which Sweeney testified.

### III.    The State Habeas Proceedings

On January 9, 2001, Lewis filed a *pro se* habeas petition in

Connecticut Superior Court.   He raised three claims: (1) newly

discovered evidence that Ruiz perjured himself; (2) a *Brady* violation

based on the State's failure to disclose evidence of Ruiz's prior

inconsistent statements and Raucci's coaching of Ruiz's testimony;

and (3) newly discovered evidence of alibi testimony. In support of

his petition, Lewis included transcripts of Sweeney's testimony at

the Morant hearing.

The Connecticut Superior Court (Howard Zoarski, *Judge*)

(hereinafter, the "state habeas court") denied Lewis's petition. With

respect to Lewis's *Brady* claim, the state habeas court concluded that

"not only was all exculpatory evidence furnished to the defense, but

also the alleged evidence was available by due diligence to the

defense." *Lewis v. Warden*, No. CV-99-0424021-S, 2001 WL 1203354,

Lewis for a murder he did not commit at the instigation of a "corrupted cop."
S.A. 74.

at *3 (Conn. Super. Ct. Sept. 19, 2001). The state habeas court determined that Raucci only provided Ruiz with "insignificant facts"—such as the location of the apartment on Howard Avenue, the color of the buildings, and the make of Lewis's car—and that "the information provided by Detective Raucci . . . did not disclose the names of the petitioner or Morant." *Id.* at *2. Notably, the state habeas decision omitted any reference to Sweeney's testimony that Ruiz initially denied having any knowledge of the murders, that he was parroting what Raucci told him, and, critically, that after he changed his story to inculpate Lewis, Ruiz told Sweeney that he did so because "Raucci said he was gonna let him go." S.A. 446.

Pursuant to Section 52-470(g) of the Connecticut General Statutes, Lewis, acting *pro se*, petitioned a justice on the Connecticut Supreme Court for certification to appeal to the Connecticut Appellate Court.[3] On October 22, 2001, the certification was denied

---

[3] At the time of Lewis's petition, Conn. Gen. Stat. Ann. § 52-470(b) (1983) provided that a petitioner seeking to bring an appeal before the Connecticut Appellate Court could seek certification to appeal from the judge who decided the case, a judge of the Connecticut Appellate Court, or a justice of the Connecticut Supreme Court. The Connecticut Legislature revised this statute in

without opinion by a one-justice order. Lewis then filed an uncertified appeal with the Appellate Court. In support of his appeal, Lewis provided the Appellate Court with transcripts from his criminal trial, the probable cause hearing, and Sweeney's testimony at the Morant hearing; the state habeas court decision; and excerpts from the FBI investigation discussing Ruiz's relationship with Raucci. On November 19, 2002, a three-judge panel of the Appellate Court issued a *per curiam* opinion, dismissing Lewis's appeal on the grounds that he failed to include the transcript from his state habeas trial before Judge Zoarski and thus failed to provide an adequate record for review. *Lewis v. Comm'r of Corr.*, 73 Conn. App. 597, 599 (2002). Thereafter, Lewis sought review by the Connecticut Supreme Court through a petition for certification, which was denied on January 14, 2003 without discussion. *Lewis v. Comm'r of Corr.*, 262 Conn. 938 (2003).

---

2002, eliminating the option to appeal to a Connecticut Supreme Court justice. Conn. Gen. Stat. Ann. § 52-470(g) (2002).

## IV.     The District Court Proceedings

Lewis filed a petition for federal habeas relief in the District of Connecticut, arguing, in relevant part, that the State denied his right to a fair trial and violated his right to due process when it withheld *Brady* material during his trial. Judge Haight first considered and rejected the State's claim that Lewis had procedurally defaulted on his *Brady* claim.[4] *Lewis v. Comm'r of Corr.*, No. 03 Civ. 196, 2012 WL 601773, at *6 (D. Conn. Feb. 23, 2012). Then, on December 16, 2013, following extensive motion practice, a ten-day evidentiary hearing at which Sweeney testified in person, and oral argument, Judge Haight granted Lewis's petition for habeas relief in a thorough 68-page opinion. *Lewis v. Comm'r of Corr.*, 975 F. Supp. 2d 169 (D. Conn. 2013). The district court determined that Lewis's habeas claim survived scrutiny under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), which requires deference to state procedures, because the state habeas decision was

---

[4] The district court also determined that Lewis did not fail to exhaust his state remedies, a determination  not challenged in this appeal.

based on an "erroneous and unreasonable" determination of the facts, 975 F. Supp. 2d at 180, and "was contrary to [clearly] established Federal law, [as determined by the Supreme Court of the United States]," *id.* at 181. The district court, after carefully articulating the arguments on both sides and meticulously reviewing all of the evidence, concluded that Lewis was entitled to federal habeas relief. *Id.* at 198.

The district court therefore directed the Commissioner of Correction of the State of Connecticut to release Lewis from its custody "within sixty (60) days of the date of this Ruling and Order, unless the State of Connecticut within those 60 days declares its written intention . . . to retry [Lewis] on the charges against him . . . ." *Id.* at 208-209. On February 14, 2014, the parties submitted a joint motion to release Lewis, which was granted by the district court. Accordingly, on February 26, 2014, the district court signed a writ ordering Lewis's release. The State timely appealed.

## DISCUSSION

The State argues that the district court erred in granting habeas relief because: (1) Lewis procedurally defaulted on his *Brady* claim at the state level, and (2) Lewis did not satisfy either of AEDPA's substantive conditions under § 2254(d) because the state habeas court's decision did not contravene clearly established federal law and was not based on an unreasonable factual determination. We disagree.

Lewis, who was a *pro se* litigant in state court, sufficiently complied with all state-law procedural requirements capable of barring federal review. Moreover, Lewis satisfied both of § 2254(d)'s substantive predicates, even though he only needed to satisfy one.[5] We conclude both (1) that the state habeas court contravened clearly established federal law as determined by the Supreme Court in

---

[5] A federal court may only grant a petitioner relief with respect to any claim that was adjudicated on the merits in State court proceedings if the State adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

*Brady* and its progeny when it held the defendant was required to exercise "due diligence" to obtain exculpatory evidence, *Lewis*, 2001 WL 1203354, at *3, and (2) that the state habeas court based its decision on unreasonable findings of fact when it ignored key aspects of the record.  Accordingly, the district court had authority to consider the merits of Lewis's *Brady* claim and properly granted habeas relief.

## I.    Procedural Bars

We review *do novo* the question of whether a procedural ground is adequate to support a state court's judgment. *See Monroe v. Kuhlman*, 433 F.3d 236, 240 (2d Cir. 2006).

"[F]ederal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state court's adjudication of a petitioner's federal claim only bars federal habeas review when "the last state court rendering a

judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) (internal quotation marks omitted). Additionally, it must be "clear from the face of the opinion" that the state court's decision rests on a state procedural bar. *Coleman*, 501 U.S. at 735 (internal quotation marks omitted); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000). However, even if the state court's decision clearly rests on a procedural bar, federal review will only be precluded if that procedural bar constitutes "a firmly established and regularly followed state practice." *Ford v. Georgia,* 498 U.S. 411, 423–24 (1991) (internal quotation marks omitted).

The State argues that Lewis's *Brady* claim was procedurally barred because (a) he failed to provide the Appellate Court with an adequate record for review, and (b) he failed to brief the issue of whether it was an abuse of discretion to deny him certification to appeal. Neither argument has merit.

## A. The Adequate-Record Rule

The State first argues that Lewis procedurally defaulted on his *Brady* claim because he did not provide the Appellate Court with a transcript of the state habeas proceedings and thus failed to provide an adequate record for review under Connecticut Rule of Appellate Procedure 61–10. Conn. Practice Book 1998 § 61-10. This argument fails for several reasons.

First, it is not clear that the Appellate Court recognized the *Brady* claim that Lewis indisputably raised, let alone dismissed it on procedural grounds. The Appellate Court's decision described the issues before it as whether the state habeas court erred:

> (1) in concluding that the testimony of Michael Sweeney, a police detective, did not constitute newly discovered evidence and (2) in failing to draw an adverse inference against the respondent commissioner of correction when Ovil Ruiz, a witness at the habeas trial, invoked his fifth amendment privilege against compelled self-incrimination.

*Lewis*, 2012 WL 601773, at *5 (internal quotation marks omitted).

The Appellate Court appears to have missed Lewis's *Brady* claim entirely.[6] Yet, in a clear and well-researched *pro se* brief to the Appellate Court, Lewis argued that the State failed to disclose evidence that was material and exculpatory, citing *Brady*, *United States v. Bagley*, 473 U.S. 667 (1985), and *United States v. Agurs*, 427 U.S. 97 (1976), among other relevant cases. With no reference to the *Brady* claim in the Appellate Court's decision, it is certainly not "clear from the face of the opinion" that the state habeas court rejected Lewis's *Brady* claim on state-procedural grounds. *Coleman*, 501 U.S. at 733; *see also Messiah*, 435 F.3d at 196.

Second, Lewis only failed to comply with the adequate-record requirement of Rule 61–10 if the state habeas transcript was necessary for appellate review. Chapter 63 of Connecticut's Rules of Appellate Procedure states that an appellant must file the portions of a trial-court proceeding transcript that he "deem[s]

---

[6] The Appellate Court's failure to recognize Lewis's *Brady* claim is likely due, at least in part, to the State's misrepresentation of the issues on appeal. The State's brief before the Appellate Court characterized Lewis's petition as presenting: (1) "claims of newly discovered evidence" and (2) "claims that the habeas court abused its discretion by not drawing an adverse inference against Ovil Ruiz." S.A. 382. Nowhere in its brief did the State address Lewis's *Brady* claim.

necessary" for review, but an appellant may file a statement that no transcript is necessary. *See* Conn. Practice Book 1998 § 63–8; § 63–4(a)(3). Lewis indicated in a statement to the Appellate Court that the state habeas transcript was not necessary for review. *See Lewis*, 73 Conn. App. at 598.  He was correct.

Lewis's petition first argued that the state habeas court erred as a matter of law by requiring him to exercise "due diligence" to obtain *Brady* material. In the particular circumstances presented here, the Appellate Court would have been able to decide the purely legal question of whether the state habeas court improperly incorporated a "due diligence" requirement into its opinion without reviewing the transcript from the state habeas proceedings.

Moreover, it is not clear what additional information the Appellate Court would have gleaned from the state habeas transcript that it did not already have. The State did not call witnesses or offer exhibits during the state habeas trial. In support of his appeal, Lewis provided the Appellate Court with transcripts from his criminal trial and the probable cause hearing; Sweeney's

testimony at the Morant hearing; the state habeas court decision; and

excerpts from the FBI investigation discussing Ruiz's relationship

with Raucci. In these circumstances, the materials provided by

Lewis were adequate to enable the Appellate Court to review

Lewis's claims of error, and the state has not explained how the

transcript could have improved the record.

### B. Certification

Section 52–470(g) of the Connecticut General Statutes requires

a petitioner seeking to appeal a habeas court's decision to file a

petition for certification to appeal. A petitioner may file an

uncertified appeal, however, if the denial of certification constituted

an abuse of discretion. *Simms v. Warden*, 230 Conn. 608, 615 (1994).

Under Connecticut law, failure to certify an appeal is an abuse of

discretion if the appeal is "not frivolous." *Taylor v. Comm'r of*

*Correction*, 284 Conn. 433, 448 (2007) (internal quotation marks

omitted).

The State argues that Lewis procedurally defaulted on his

*Brady* claim following the denial of certification to appeal by a justice

of the Connecticut Supreme Court because he failed to brief the question of whether that denial constituted an abuse of discretion in his petition to the Appellate Court. But the State has not shown that "a firmly established and regularly followed state practice" required Lewis to brief the certification issue. *See Ford,* 498 U.S. at 423–24. In fact, the State does not identify any Connecticut authority for a certification-briefing requirement; rather, it argues that Lewis failed to follow the *procedure* for appeals. Moreover, Connecticut courts do not regularly enforce this procedure. *See, e.g., Hankerson v. Comm. of Corr.,* 150 Conn. App. 362, 368 (2014) (ordering supplemental briefing when the petitioner failed to brief the certification question).

Even assuming such a briefing requirement existed, Lewis effectively complied with it by arguing to the Appellate Court that his appeal was not frivolous. Connecticut courts apply the criteria set forth in *Lozada v. Deeds,* 498 U.S. 430, 431–32 (1991) (per curiam), when determining whether an appeal is frivolous. Under *Lozada,* a petitioner must demonstrate one of the following: "that the issues are debatable among jurists of reason; that a court *could* resolve the

issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." 498 U.S. at 432 (emphasis in original) (internal quotation marks and alternations omitted). Thus, in deciding the abuse of discretion question, a court "necessarily must consider the merits of the petitioner's underlying claims." *Taylor*, 284 Conn. at 449.

Lewis fully argued the merits of his *Brady* claim. Although he did not cite *Lozada* by name, Lewis contended, *inter alia*, that the state habeas court "applied the wrong standard of review concerning the evidence of Sweeney's testimony," and that its factual findings were "unsupported by the evidence." S.A. 296. He also provided citations to the portions of Sweeney's testimony before Judge Blue, *see supra* note 1, which undermined Ruiz's credibility. At the very least, Lewis demonstrated that his case presented issues that were debatable among jurists of reason. *See Lozada*, 498 U.S. at 432. Given that courts interpret *pro se* filings liberally, *see, e.g., Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Ajadi v. Comm'r of Corr.*, 280 Conn. 514, 549 (2006), we easily

interpret Lewis's brief to argue that his appeal was not frivolous and thus that it was an abuse of discretion to deny certification.

Accordingly, we find no procedural bar to considering the merits of Lewis's habeas claim and thus turn to AEDPA's substantive predicates.

## II.    § 2254(d) Substantive Predicates to Federal Habeas Review

We review a district court's decision to grant a petition for a writ of habeas corpus *de novo* and its factual findings for clear error. *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007).

AEDPA provides for federal habeas relief when a "person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), subject to certain conditions.  AEDPA states that a federal habeas court may only grant a petitioner relief with "respect to any claim that was adjudicated on the merits in State court proceedings" if the State adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see also, e.g., Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). A federal habeas court must assume that all factual determinations made by the state court were correct unless the petitioner rebuts those findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010). Given that the Appellate Court denied, erroneously in our view, Lewis's petition on the basis that he failed to file the transcript of his state habeas proceeding, the only state court that adjudicated Lewis's habeas petition "on the merits" was the state habeas court.

The phrase "clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to such clearly established federal law if it "applies a rule that contradicts the governing law set forth in the Supreme Court's cases" or "if the state

court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001) (quoting *Williams,* 529 U.S. at 406) (internal alterations omitted). A state court decision is based on a clearly erroneous factual determination if the state court "failed to weigh all of the relevant evidence before making its factual findings." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004); *see also Milke v. Ryan*, 711 F.3d 998, 1010 (9th Cir. 2013) (a state court decision is based on an "unreasonable determination of the facts" if the state court fails "to consider key aspects of the record").

In sum, in order to satisfy § 2254(d)'s substantive predicates and merit federal review of his *Brady* claim, Lewis need only establish *either* that the state habeas court's decision: (1) contravened clearly established federal law, as determined by the Supreme Court, *or* (2) was based on an unreasonable determination of the facts.  Here, Lewis has shown both.

**A. Clearly Established Federal Law: *Brady* and its Progeny**

Well-established Supreme Court precedent holds that the prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence. *See Brady*, 373 U.S. at 87. This duty exists whether or not the defense requests exculpatory evidence. *See, e.g., Bagley*, 473 U.S. at 681-2; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (applying *Brady* to impeachment evidence). The Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material. *See, e.g., Agurs,* 427 U.S. at 107 ("[I]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made.").

To be sure, we have held in several cases that "[e]vidence is not 'suppressed' [for *Brady* purposes] if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006); *see also Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 1982). The "knew" prong of this requirement is subjective,

and the "should have known" prong is objective—meaning that, if a reasonable defendant in these circumstances *should have known* the relevant facts, then the prosecution's failure to disclose that evidence does not implicate *Brady*.  This requirement speaks to facts already within the defendant's purview, not those that might be unearthed. It imposes no duty upon a defendant, who was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*.

Here, the Connecticut Superior Court's ruling imposed just such an affirmative "due diligence" requirement.  *See Lewis*, 2001 WL 1203354, at *3 (rejecting Lewis's claim because the exculpatory evidence at issue "was available by due diligence to the defense").  Accordingly, the state habeas court's imposition of such a due diligence requirement plainly violated clearly established federal law under *Brady* and its progeny.

The State's argument that the state habeas court's "due diligence language is reasonably interpreted as directed to the

petitioner's 'actual innocence' assertion, rather than his *Brady* claim,"

Resp. Br. at 39, distorts the state habeas court's decision.   The

relevant portion of the decision states:

> The claim of the petitioner that exculpatory information
> was not provided to the defense prior to the trial in
> 1995, has not been proven. This court finds not only was
> all exculpatory evidence furnished to the defense, but
> also *the alleged evidence was available by due diligence to the
> defense*, and the petitioner was obliged to raise his
> claims before the trial court or the Appellate Court.

*Lewis*, 2001 WL 1203354, at *3 (emphasis added).    The "due

diligence" language patently pertains to Lewis's claim that

"exculpatory evidence was not provided to the defense," in other

words, to his *Brady* claim.

The State also argues that the due diligence finding was an

"alternate basis" for the state habeas court's denial of Lewis's

petition, and therefore the legal error is immaterial. That argument,

however, only succeeds if the state habeas court had a valid basis for

determining that "all exculpatory information [was] turned over to

the defense," and thus that there was no *Brady* violation. For the

reasons explained below, it did not.[7]

## B. Unreasonable Determination of the Facts

The state habeas court's determination that "all exculpatory

evidence [was] furnished to the defense" was clear factual error. The

prosecution never disclosed to Lewis or to defense counsel either

prior to or during trial that Raucci had coached Ruiz on the

testimony he ultimately gave at trial, that Ruiz was parroting what

Raucci told him, or that he was doing so because Raucci said he

would let him go. Nothing in the record supports a finding to the

contrary.  The fact that the information to which Sweeney testified

---

[7] The state habeas court also erred to the extent that it concluded that Sweeney's testimony would not have affected Lewis's conviction and thus did not satisfy *Brady's* materiality requirement. *See Lewis v. Warden*, 2001 WL 1203354, at *3 ("The petitioner has failed to prove that any critical information was disclosed by Detective Raucci, or that he provided any false information to Ruiz.").  The state habeas court's implication that Sweeney's testimony would not have affected Lewis's conviction also "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see also Leka*, 257 F.3d at 104 ("The touchstone of materiality is a reasonable probability of a different result.").  For the reasons explained in Part V, Sweeney's testimony satisfied the materiality standard because there is a reasonable probability that its disclosure would have caused a different result.  Any legal determination to the contrary, therefore, involved an unreasonable application of clearly established federal law.  Additionally, as described in greater detail below, the state habeas court's decision was based on an unreasonable determination of the facts. *See infra* Part II.B.

had not been provided to the prosecution at the time of trial is of no

import. The State's failure to disclose exculpatory evidence,

including impeachment evidence, in its possession constitutes a

*Brady* violation, irrespective of the good faith or bad faith of the

prosecution, *Brady*, 373 U.S. at 87, and regardless of whether the

information is known only by the police and not the prosecutor, *see*

*Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *see also United States v.*

*Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). [8]

Moreover, Judge Blue concluded that Sweeney was a credible

witness,[9] *see Morant v. State*, No. 398736, 2000 WL 804695, at *9

(Conn. Super. Ct. June 5, 2000) *aff'd,* 68 Conn. App. 137 (2002), and

the state habeas court never questioned Sweeney's credibility.  Thus,

Lewis has rebutted the presumption in favor of the state habeas

---

[8] We have held that evidence in state possession is not attributed to the prosecution if known only by entities outside the "prosecution team."  *See United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) ("[T]he propriety of imputing knowledge to the prosecution is determined by examining the specific circumstances of the person alleged to be an 'arm of the prosecutor.'" (quoting *United States v. Morell,* 524 F.2d 550, 555 (2d Cir. 1975)).   Here, there is no question that the evidence showing that Raucci coached Ruiz was within the possession of police officers, both Raucci and Sweeney, who were part of the investigative team and thus were "arm[s] of the prosecutor."

[9] After the federal habeas hearing, Judge Haight reached the same conclusion. *See Lewis*, 975 F. Supp. 2d at 194.

court's findings by "clear and convincing evidence." *See Bierenbaum*, 607 F.3d at 48.

The State argues that as a "corollary" to its finding that all exculpatory information had been provided to the defense, the state habeas court determined that Sweeney's testimony was not exculpatory. Nothing in the state habeas court's decision supports the State's argument, and we do not owe AEDPA deference to speculation that the state habeas court reached that conclusion. *See Boyette*, 246 F.3d at 91.

In any event, the state habeas court plainly based its decision on an unreasonable determination of the facts. The state habeas court found that Raucci only provided Ruiz with "insignificant" details. *Lewis*, 2001 WL 1203354, at *2. But Sweeney's testimony is replete with evidence showing that Raucci supplied Ruiz with, in Sweeney's words, "the whole case," S.A. 317, and told Ruiz to say that "he was present with the two individuals, Scott Lewis and Stefon Morant," S.A. 460. The state habeas decision also notably failed to reference the evidence that Ruiz not only denied having

any knowledge of the murders three different times, but that after implicating Lewis in the murders, Ruiz told Sweeney the inculpatory account was false and that he was lying to protect himself. In failing to note, much less consider, these key facts, the state habeas court based its decision on an unreasonable determination of the facts. *See, e.g., Menefee*, 391 F.3d at 164; *Milke*, 711 F.3d at 1010.

Given that Lewis has satisfied AEDPA's substantive predicates, we finally turn to the merits of his *Brady* claim.

**III.     Section 2254(a): The Merits of Lewis's *Brady* Claim**

There are three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Boyette*, 246 F.3d at 89 (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).

We agree with Judge Haight's thoughtful analysis of Lewis's *Brady* claim, summarized as follows.

## A. Exculpatory Evidence

Sweeney's testimony and the facts he revealed were clearly favorable to Lewis. "Evidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness." *Boyette*, 246 F.3d at 90 (citing *Bagley*, 473 U.S. at 676). Ruiz—the State's key witness at trial—repeatedly denied to the police that he was at the murder site and that he knew anything about the murders. His statement changed only after Raucci provided critical details about the case, told Ruiz "that it was in his best interest to tell what happened [and] give a detailed statement as to his participation and also the other two," S.A. 317, and promised to "let [Ruiz] go" if he did so, S.A. 446. That evidence was "of a kind that would suggest to any prosecutor that the defense would want to know about it." *Leka*, 257 F.3d at 99.

If defense counsel had known this information at trial, he could have cross-examined Ruiz regarding his prior inconsistent statements and the extent to which Raucci coached him and induced him to testify falsely. *See Giglio*, 405 U.S. at 154-55 (applying *Brady* to

material that can be used to impeach a prosecution witness). As the
district court concluded, Sweeney's testimony was clearly
exculpatory under *Brady* or impeachment material under *Giglio*, if
not both.

## B. Failure to disclose

For the reasons explained above, the State plainly failed to
disclose *Brady* evidence to the defense in Lewis's case.

## C. Prejudice

To establish prejudice, a plaintiff must show that the evidence
was material. *Leka*, 257 F.3d at 104 (quoting *Kyles*, 514 U.S. at 434).
"The touchstone of materiality is a reasonable probability of a
different result." *Id*. (alteration omitted). As the Supreme Court has
explained:

> The question is not whether the defendant would more
> likely than not have received a different verdict with the
> evidence, but whether in its absence he received a fair
> trial, understood as a trial resulting in a verdict worthy
> of confidence. A 'reasonable probability' of a different
> result is accordingly shown when the government's
> evidentiary suppression 'undermines confidence in the
> outcome of the trial.'

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

At trial, no witness other than Ruiz directly implicated Lewis in the murders,[10] and the State did not introduce any forensic or eyewitness testimony against Lewis. As a result, Ruiz's testimony was critical to the State's obtaining a conviction.

Sweeney provided credible evidence that Ruiz simply parroted information supplied by an unscrupulous police officer. Sweeney's testimony thoroughly undermines Ruiz's credibility and thus any reasonable confidence in the outcome of the trial. *See Kyles*, 514 U.S. at 434. Accordingly, the State's failure to disclose the evidence relating to Ruiz's interrogation prejudiced Lewis and deprived him of his Constitutional right to a fair trial.

## CONCLUSION

For the reasons stated above, we AFFIRM the District Court's order granting Lewis's petition for habeas relief under 28 U.S.C. § 2254.

---

[10] The only other witness who offered *any* testimony connecting Lewis to the murders, Jose Roque, recanted prior to trial and insisted that Raucci had coached him on what to say in his statement. S.A. 187-188. Significantly, at Lewis's trial, Roque also testified that Raucci told him that Raucci "wanted to put Scott Lewis away." S.A. 193.