KELLY, Circuit Judge,
concurring in part and dissenting in part..
I respectfully dissent from the court’s conclusion that the evidence of former Lit- *1002 tie Rock Police Department (LRPD) Detective Charles Weaver’s misconduct was not material to the defendant’s conviction for marijuana distribution. Weaver was the main witness who testified for the government on this charge, and his misconduct was strongly impeaching evidence. The defendant, former LRPD police officer Randall Robinson, was deprived of a fair trial by not being able to use it.
Weaver was the architect of the sting operation against Robinson, and he was the government’s primary witness on the marijuana-distribution charge. But he was fired by his department two months after Robinson’s trial for taking money from the department’s property room and forging the signatures of the rightful owners, just a few months before he testified at Robinson’s trial. This type of evidence goes directly to a law enforcement officer’s credibility; and given the nature of the evidence presented generally against Robinson, it is likely to have gone a long way toward discrediting Weaver’s testimony if the jury had heard it.
Another LRPD Detective, Rick Kiser, did testify that he saw Robinson sell drugs to a confidential informant (Cl). But even if Kiser’s testimony alone would have been enough- to support Robinson’s marijuana-distribution conviction, that doesn’t mean that evidence of Weaver’s misconduct was not material. “A defendant need not demonstrate that after discounting the inculpa-tory evidence in light of the undisclosed evidence, there would not have been enough left to convict.” Kyles v. Whitley, 514 U.S. 419, 434-35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Thus, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Id. at 434, 115 S.Ct. 1555.
Kiser’s testimony was problematic even before evidence of Weaver’s misconduct was uncovered. Weaver did not witness the drug transaction between the Cl and Robinson; Kiser was the only person who testified at trial who claimed to have done so. Yet, Kiser’s testimony four years after the fact was inconsistent with a police report Weaver wrote only a week after the controlled buy. On cross-examination, Weaver agreed that his report indicated instead that Kiser simply showed up, saw “Robinson at the back of a pickup with two other men,” and then drove away. . The report went on to state that the Cl contacted Weaver an hour after Kiser exited the complex to report that the transaction was complete. Weaver said at trial that he “made a mistake” when writing his report, but admitted “[tjhat’s what [the report] says.”
At trial, Weaver tried to clear up this inconsistency by testifying that he only learned that Kiser witnessed Robinson’s handing the informant a package after he had typed up his report, which was seven days after the transaction. But Kiser testified differently. Kiser claimed he was in contact with Weaver during the controlled buy and told him in real-time that he had observed the hand-off. Given these discrepancies, if a jury had been allowed to hear about Weaver’s misconduct, it may have discounted not only Weaver’s testimony, but Kiser’s as well. Evidence that the key witness against a fellow police officer in a criminal case was himself purportedly involved in criminal activity in connection with police business might easily have reflected badly on the Little Rock Police Department as a whole, and by extension, on Kiser’s credibility as a member of that department. See Kyles, 514 U.S. at 445, 115 S.Ct. 1555 (“[T]he effec *1003 tive impeachment of one eyewitness can call for a new trial even though the attack does not extend directly to others.... ”).
Evidence of Weaver’s misconduct was material not just because of the weaknesses in Kiser’s testimony, but also because the government’s case depended on Weaver’s testimony to a large extent.[3] Much of the evidence concerning the sting operation against Robinson came in through Weaver’s testimony — and could only have come in through his testimony. Weaver was the one who had the confidential informant call Robinson, the one who identified Robinson’s voice over the phone, the one who searched the informant and his car to make sure there was no contraband there prior to the controlled buy, and the one who provided the cash for the informant to use in the transaction. He also testified that he was the officer who had visual contact with the Cl “when [he] met with him, followed him to the scene, and then afterwards when [he] followed him back to the meeting location.” In other words, Weaver was the officer who monitored the Cl’s whereabouts to ensure he did not engage in wrongdoing or stray from the scripted plan.
Not insignificantly, Weaver also testified that he was the officer who took custody of the package from the Cl. Weaver then transported it to the police department and “logged, tagged, and stored it in the Little Rock Police Department property system.” Weaver testified that he “sealed the evidence with evident tamper tape,” and “initialed and dated” across the tape “to ensure that if it was tampered with, it’d be obvious to [him].” Yet the impeachment evidence would have suggested to the jury that Weaver was not a trustworthy custodian of the department’s property room, and that he was not above tampering with evidence himself. In short, Weaver’s testimony was central to the government’s case. And it is hard to see how the introduction of evidence significantly impeaching his credibility would not “put the whole case in such a different light as to undermine confidence in the verdict.” Id at 435, 115 S.Ct. 1555.
Because I believe the evidence of Weaver’s misconduct was material, I think we cannot avoid the question of whether that evidence is subject to Brady’s disclosure obligations in the first place. In my view, it is. First, the application of Brady does not depend on the prosecutor’s culpability for the non-disclosure, but rather on whether the non-disclosure deprived the defendant of a fair trial. See United States v. Agurs, 427 U.S. 97, 110 & n. 6, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (holding that the prosecution’s “constitutional obligation [to disclose] is [not] measured by the moral culpability, or the willfulness, of the prosecutor.”); see also Strickler v. Greene, 527 U.S. 263, 288, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (“[U]nder Brady an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment”); Smith v. Phillips, 455 U.S. 209, 219-20, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); Brady, 373 U.S. at 87-88, 83 S.Ct. 1194; Porter v. White, 483 F.3d 1294, 1305 (11th Cir.2007) (“The Brady rule thus imposes a no-fault standard of care on the prosecutor. If favorable, material evidence exclusively in the hands of the prosecution team fails to reach the defense — for whatever reason— and the defendant is subsequently convicted, the prosecution is charged with a Brady violation, and the defendant is entitled to a new trial.”); United States ex rel. Smith v. Fairman, 769 F.2d 386, 392 (7th Cir.1985) (“Brady was aimed at ensuring *1004 that an accused receives a fair trial rather than punishing the prosecutor for failing to disclose exculpatory evidence”). Thus, the fact that the prosecutor in this case was, by all accounts, in no position to learn of and disclose Weaver’s alleged misconduct prior to trial does not compel the conclusion that no Brady violation occurred.
Second, “Brady suppression occurs when the government fails to turn over even evidence that is ‘known only to police investigators and not to the prosecutor.’ ” Youngblood v. West Virginia, 547 U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) (quoting Kyles, 514 U.S. at 438, 115 S.Ct. 1555); Kyles, 514 U.S. at 437, 115 S.Ct. 1555 (“[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.”); see also D’Ambrosio v. Marino, 747 F.3d 378, 389 (6th Cir.2014); United States v. Osorio, 929 F.2d 753, 762 (1st Cir.1991) (“Ultimately, regardless of whether the prosecutor is able to frame and enforce directives to the investigative agencies to respond candidly and fully to disclosure orders, responsibility for failure to meet disclosure obligations will be assessed by the courts against the prosecutor and his office.”).[4]
It follows that “[t]he State’s failure to disclose exculpatory evidence, including impeachment evidence, in its possession constitutes a Brady violation, irrespective of the good faith or bad faith of the prosecution, and regardless of whether the information is known only by the police and not the prosecutor.” Lewis v. Conn. Comm’r of Corr., 790 F.3d 109, 122 (2d Cir.2015) (citations omitted). One could conceivably carve out an exception to this rule based on the fact that in this case, presumably only Weaver knew of his own misconduct. But I see no meaningful way to distinguish this situation from one in which a single officer is the only person involved with the prosecution who knows of any other type of exculpatory or impeaching evidence. That Detective Weaver might have to incriminate himself in order to satisfy Brady presents a dilemma for Detective Weaver. But the Brady regime is no-fault, and focuses on “assuring] the defendant a ‘fair trial,’ ” not on assessing the culpability of the prosecutor. United States v. Jones, 34 F.3d 596, 600 (8th Cir.1994). The fact that the prosecutor was not at fault does not change the fact that Robinson was convicted by a jury that did not have access to material evidence, depriving him of his right to a fair trial. Kyles, 514 U.S. at 434, 115 S.Ct. 1555.
I also see no reason why impeachment evidence involving misconduct that is not directly case-related can never be Brady evidence. Rather, the extent to which the misconduct relates to the case is a factor— indeed, an important one — in determining whether the undisclosed evidence is material. Take for example a key government trial witness who has admitted to lying under oath to secure a conviction when testifying in numerous past trials. Would that “unrelated” misconduct not cast seri *1005 ous doubt on the fairness of the trial, simply because the misconduct occurred in other, earlier trials?[5] Although Weaver’s misconduct was not part of his investigation into Robinson, the fact that it occurred just months before trial while Weaver was acting in the course of his official duties makes it highly probative of his credibility.
Straightforward application of the Supreme Court’s Brady case law would not place prosecutors in an impossible position.[6] It is likely a rare case where undisclosed misconduct so clearly affects the credibility of a witness central to the government’s case, or is material to the conviction. But as the facts of this case show, rare is not never. I would therefore find that Weaver is entitled to a new trial on his conviction for distributing approximately half a pound of marijuana on August 4, 2009.[7]
I also respectfully disagree with the court’s decision to grant the government’s motion to supplement the record with a letter from Chief Magistrate Judge Thomas Ray explaining the type of work Annie Depper performs as a law clerk. The Federal Rules of Appellate Procedure permit supplementing the record on appeal only “[i]f anything material to either party is omitted from or misstated in the record by error or accident.” Fed. R.App. P. 10(e)(2). Chief Magistrate Judge Ray’s letter was not omitted from the record by error or accident; it did not exist when the appeal was taken. It would therefore be inappropriate for us to consider it at this stage. Instead, I would hold that even without consulting the information contained in the letter, Chief Judge Miller did not abuse his discretion in declining to recuse himself after Depper was hired. See United States v. Casas, 376 F.3d 20, 23 (1st Cir.2004) (“Judges are under no obligation to provide a statement of reasons for recusal.” (quotation marks omitted)).
I otherwise join the opinion of the court.

. No photographs or other physical evidence of the controlled buy, like the currency notes that were allegedly used, were ever introduced by the government.

. I question whether our decision in United States v. Kern, 12 F.3d 122, 126 (8th Cir.1993), which held that Brady does not apply to cases where the undisclosed evidence was not "in the prosecutor's files,” can be reconciled with the Supreme Court's decision two years later in Kyles, 514 U.S. at 438, 115 S.Ct. 1555, which rejected the claim that Brady does not apply to "evidence known only to police investigators and not to the prosecutor.” Kem also suggested that the knowledge of state officials may not be imputable to a federal prosecutor; but at the time of trial Weaver was assigned to the FBI, and there is no indication that this was not the case at the time of his alleged misconduct a few months earlier. Kern, 12 F.3d at 126.

. United States v. Robinson expresses the concern that unless the doctrine of Brady imputation is narrowed, it would undermine the rules restricting new trials under Rule 33 of the Federal Rules of Criminal Procedure. 627 F.3d 941, 952 (4th Cir.2010). But a number of Rule 33 motions are based on newly-discovered evidence that would not give rise to a Brady claim because the evidence was not in the possession of any government official. Rule 33’s restrictions on new trials would remain intact in such cases. And Robinson’s concern that past Rule 33 cases "should all have instead been Brady cases,” id., is belied by the fact that a number of Rule 33 motions based on newly-discovered evidence have often been brought as Brady claims. See, e.g., United States v. Tate, 633 F.3d 624, 628, 629-31 (8th Cir.2011); United States v. Dittrich, 204 F.3d 819, 821-22 (8th Cir.2000); Kern, 12 F.3d at 125-26.

. I disagree that "full interviews and background checks on everyone who touched the case” would be necessary — or even effective. Robinson, 627 F.3d at 952. Instead, a prosecutor could potentially mitigate the risk of a retrial by allowing government witnesses who were closely involved in the prosecution to simply recuse themselves from a case such as this one without further comment. Cf. Kyles, 514 U.S. at 438, 115 S.Ct. 1555 (“In the State’s favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that procedures and regulations can be established to carry [the prosecutor’s] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.” (internal quotation marks omitted) (alteration in original)).

.How the granting of a new trial on the marijuana-distribution charge would affect Robinson’s conviction on the false-statement charge is a question I would leave for the district court on remand.